UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

CINEMEX HOLDINGS USA, INC.,     Chapter 11 (Subchapter V)
CMX CINEMAS, LLC, and CB
THEATER EXPERIENCE LLC,[1]     Case No. 25-17559-LMI

                                                   (Jointly Administered)

      Debtors.
_____/

# DEBTORS' AMENDED[2] MOTION TO REJECT CMX VILLAGE 14 LEASE EFFECTIVE AS OF JULY 31, 2025

**(Hearing Requested August 12, 2025)**

*The Debtors are party to a various lease, which they seek to reject as expeditiously as possible in order to preserve the assets of these estates and minimize to the greatest extent possible potential claims for administrative rent.*

*The Debtors respectfully request that the Court conduct a hearing on this Motion as soon as possible, but in any event no later than August 12, 2025, as the Debtors believe that a hearing on this Motion is needed immediately in order for the Debtors to best reduce the estates' potential exposure under this lease. The Debtors respectfully request that the Court waive the provisions of Local Rule 9075-1(B), which requires an affirmative statement that a bona fide effort was made in order to resolve the issues raised in the Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.*

Cinemex Holdings USA, Inc. ("Cinemex Holdings"), CMX Cinemas, LLC ("CMX") and

CB Theater Experience, LLC ("CB Theater" and, with Cinemex Holdings and CMX, the

---

[1] The Debtors in these cases and the last four digits of each Debtors' federal tax identification number are as follows: (1) Cinemex Holdings USA, Inc. (5502); (2) CMX Cinemas, LLC (1938); and (3) CB Theater Experience LLC f/k/a Cobb Theater Experience LLC f/k/a Cinemex NC, LLC (0563). The address for the Debtors is 4300 Biscayne Blvd, Suite 203, Miami, FL 33137.

[2] Amended to provide for the Debtors to operate post-rejection in the leased premises on a month-to-month basis with the rent adjusted to be a percentage rent, as more fully described below.

1

"Debtors") by and through their proposed undersigned counsel, pursuant to 11 U.S.C. § 365(a) and Bankruptcy Rule 6006, file this motion ("Motion") seeking the entry of an order approving the rejection, as of July 31, 2025, of the lease (the "Lease") described below. In support of this Motion, the Debtors rely upon the *Declaration in Support of First Day Pleadings* (ECF No. 13) (the "First Day Declaration"), and respectfully represent as follows:

I. **JURISDICTION**

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought herein are 11 U.S.C. § 365(a) and Bankruptcy Rule 6006.

II. **BACKGROUD**

2. On June 30, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

3. The Debtors are operating their businesses and managing their affairs as a debtors-in-possession pursuant to section 1184 of the Bankruptcy Code.

4. For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.

5. CB Theater operates twenty-six movie theaters in seven different states, including Florida (with multiple theaters in South Florida), Alabama, Georgia, Illinois, North Carolina, Ohio, and Virginia. The theaters operate under the brand names "CMX Cinemas" and "CMX CinéBistro."

6. The long-term effects of COVID-19 have continued to undermine the Debtors' business, as attendance levels at movie theaters have remained significantly below pre-pandemic

2

levels due to a shift in consumer behavior. Moreover, the explosive growth and availability of numerous streaming platforms has reshaped the movie theater industry. Today, movie lovers are often streaming films from their own homes. These trends have had a direct and negative effect on box office revenues, as well as on ancillary revenues such as food and beverage sales.

### III. THE LEASE

7. The Debtors intend to reorganize their movie theater business, notwithstanding the continued impacts of the COVID-19 pandemic and the changes in consumer behavior. These Chapter 11 cases can and do provide the "breathing spell" to give the Debtors time to negotiate with landlords and pursue the best path to maximize value for all constituents.

8. Nevertheless, the Debtors have determined that certain leases have proven to be not economically viable and an economic burden that may impede a successful reorganization. At this stage, the Debtors seek to reject the lease (the "Lease") with landlord TRC Leesburg Retail Owner, L.L.C. as successor-in-interest to CRP/TRC Leesburg Retail Owner, L.L.C. and Carlyle/Cypress Leesburg I, LLC (the "Landlord") for the premises known as CMX Village 14 (the "Premises"). The Lease is listed on **Exhibit A** annexed hereto.

9. After negotiations with the Landlord, the Landlord has agreed to permit the Debtor to continue to operate in the Premises post-rejection on a month-to-month basis with rent adjusted to be set as a percentage of EBITDA, pursuant to the letter agreement (the "Letter Agreement") annexed hereto as **Exhibit B**.

### IV. RELIEF REQUESTED AND BASIS THEREFORE

10. By this Motion, the Debtors seek authority, pursuant to Bankruptcy Code section 365(a), to reject the Leases. The Debtors have determined in their business judgment that the

3

Leases are unnecessary to the administration of their bankruptcy cases and are burdensome to their estates.

11. Bankruptcy Code section 365(a) allows a debtor, subject to approval of the bankruptcy court, to assume or reject any executory contract or unexpired lease. *See Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996); *In re TOUSA, Inc.*, No. 14-12067, 2015 WL 1346098, at *5 n. 3 (11th Cir. Mar. 26, 2015) (in dicta). "This provision allows a [debtor] to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title,* 83 F.3d at 741 (quoting *In re Murexco Petrol., Inc.*, 15 F.3d 60, 62 (5th Cir. 1994) (internal quotation marks omitted)).

12. A debtor's decision to assume or reject an executory contract or unexpired lease is subject to the "business judgment" test. *Byrd v. Gardinier, Inc. (In re Gardinier, Inc.)*, 831 F.2d 974, 975-76 n.2 (11th Cir. 1987); *In re Surfside Resort and Suites, Inc.*, 325 B.R. 465, 469 (Bankr. M.D. Fla. 2005); *In re Weaver Oil Co., Inc.*, No. 08-40379-LMK, 2008 WL 8202063 at *2 (Bankr. N.D. Fla. Nov. 17, 2008); *In re Colony Beach & Tennis Club Ass'n, Inc.*, 2010 WL 746708, at *3 (M.D. Fla. Mar. 2, 2010). The sole inquiry is whether assumption or rejection will benefit this estate. *See id*.

13. In applying the "business judgment" test, courts show great deference to a debtor's decision to assume or reject an executory contract or unexpired lease. *See In re Colony Beach & Tennis Club Ass'n, Inc.*, 2010 WL 746708, at *3 ("[T]he bankruptcy court may not substitute its own judgment for that of a debtor unless the debtor's decision is so manifestly unreasonable that it must be based upon bad faith, whim, or caprice.'") (quoting *Surfside Resort and Suites*, 325 B.R. at 469 (internal citations omitted); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of debtor's

4

decision to assume or reject an unexpired lease "should be granted as a matter of course"). As long as the decision to assume or reject is a reasonable exercise of business judgment, courts should approve the assumption or rejection of an executory contract or unexpired lease. *See, e.g., NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *Group of Institutional Investors v. Chicago M. St. P. & P. R. R. Co.*, 318 U.S. 523, 550-51 (1943).

14. In the case of the above-described Lease, rejection will relieve the Debtors' estates of significant administrative expenses that the Debtors do not believe fit into their reorganization planning. The Debtors are concerned that the Lease would potentially create obligations of the Debtors that could unnecessarily drain the Debtors' resources compared to the benefits associated with the Lease. Also, the Debtors do not believe that the Lease has any value that can be achieved through an assumption and assignment to a third party. Therefore, maintaining the Lease would impose unnecessary costs and burdens on the Debtors' estates with no commensurate benefit.

15. The amounts owing under the Lease will accrue as administrative expenses unless the Debtors reject them. Because the Debtors will not profit from the continued performance under the Lease, and rejection will avoid the accrual of administrative expenses, it necessarily follows that rejection of the Lease of the Debtors' business judgment. As such, the Debtors have concluded that this rejection of the Lease is in the best interests of creditors and the Debtors' estates.

16. The Debtors have further concluded that entry into the Letter Agreement is in the best interests of creditors and the Debtors' estates, as it will permit the Debtors to continue generating revenues while adjusting the ongoing rental obligation to corollate to EBITDA.

V. **CONCLUSION**

17. Rejection of the Lease represents a sound business decision by the Debtors. The rejection of the Lease will free the Debtors of unnecessary administrative expenses and preserve

4917-8694-5116, v. 1

much-needed cash for the Debtors' reorganization efforts. Under the circumstances, rejection of the Leases effective as of July 31, 2025, is warranted.

WHEREFORE, the Debtors respectfully request that the Court grant the Motion, enter an order substantially in the form annexed hereto as **Exhibit C**, and grant such other and further relief as is just and proper.

Dated: August 8, 2025

Respectfully Submitted,

BAST AMRON LLP
One Southeast Third Avenue, Suite 2410
Miami, FL 33131
Telephone: (305) 379.7904
Email: jbast@bastamron.com
Email: jleggett@bastamron.com

By:  */s/ Jaime B. Leggett*
Jeffrey P. Bast, Esq. (FBN 996343)
Jaime B. Leggett, Esq. (FBN 1016585)

-and-

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Patricia B. Tomasco (admitted *pro hac vice*)
700 Louisiana, Suite 3900
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email: pattytomasco@quinnemanuel.com

-and-

Alain Jaquet (admitted *pro hac vice*)
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100
Email: alainjaquet@quinnemanuel.com

-and-

>Razmig Izakelian (admitted *pro hac vice*)
>865 S. Figueroa Street, 10th Floor
>Los Angeles, California 90017
>Telephone: 213-443-3000
>Facsimile: 213-443-3100
>Email: razmigizakelian@quinnemanuel.com

>*Counsel for the Debtors*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 8, 2025, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

>*/s/ Jaime B. Leggett*
>Jaime B. Leggett, Esq.

## Exhibit A

## List of Leases

| Theater Name | Street Address | Lessee | Lessor |
|---|---|---|---|
| CMX Village 14 | 1600 Village Market Blvd Suite 116, Leesburg, VA 21075 | CB Theater Experience LLC | TRC Leesburg Retail Owner, L.L.C. as successor-in-interest to CRP/TRC Leesburg Retail Owner, L.L.C. and Carlyle/Cypress Leesburg I, LLC |

4917-8694-5116, v. 1

## **Exhibit B**

August 7, 2025

**VIA DOCUSIGN
(rafael.munoz@cmxcinemas.com)**
CB Theater Experience, LLC
c/o Wine & Roses, S.A. de C.V.
Av. Javier Barros Sierra No. 540
Torre 1 Piso 2, Col Sante Fe,
C.P. 01210
Mexico City, Mexico
Attention: Legal

**VIA DOCUSIGN
(Marel.gonzalez@cmxcinemas.com)**
Cinemex Holdings USA, Inc.
c/o Wine & Roses, S.A. de C.V.
Av. Javier Barros Sierra No. 540
Torre 1 Piso 2, Col Sante Fe,
C.P. 01210
Mexico City, Mexico
Attention: Legal

Re:   Retail Center Deed of Lease Agreement dated December 29, 2009 (as amended and assigned, the "Lease"), between TRC Leesburg Retail Owner, L.L.C. as successor-in-interest to CRP/TRC Leesburg Retail Owner, L.L.C. and Carlyle/Cypress Leesburg I, LLC ("Landlord") and CB Theater Experience LLC, as successor-in-interest to Cobb Theatres IV, LLC ("Tenant"), for that premises more particularly described in the Lease (the "Premises"), located in the Village at Leesburg in Leesburg, Virginia;[1] Guaranty dated May 2, 2018 ("Guaranty") by Cinemex Holdings USA, Inc. ("Guarantor")[2]

## LETTER AGREEMENT

Dear Tenant and Guarantor:

This Letter Agreement ("Agreement") follows, among other things, our communications, including our communications of July 23, 2025, and the *Debtors' Motion to Reject CMX Village 14 Lease Effective as of July 31, 2025* [Docket No. 144] (the "Motion") filed in the bankruptcy case *In re: Cinemex Holdings USA, Inc., CMX Cinemas, LLC, and CB Theater Experience, LLC*, Case No. 25-17559-LMI (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Florida (Miami Division) (the "Bankruptcy Court").[3]

Notwithstanding the Debtors' Motion, the Landlord asked the Debtors, and the Debtors agreed to (i) continue operating in the Premises in accordance with the Lease's requirements concerning operations within the Premises, including, but not limited to Article 26 of the Original Lease, through at least August 31, 2025 in lieu of ceasing operations in the Premises as of July 31, 2025 and (ii) cooperate with the Landlord in transitioning business operations to the next operator as such may be identified by the Landlord.

---

[1] The Debtors (hereinafter defined) refer to this location as "CMX Village 14" in its marketing materials, including its website. The Debtors' website identifies the address of the Premises as "1600 Village Market Blvd Suite 116, Leesburg, VA 21075."

[2] The Tenant, Guarantor, and CMX Cinemas, LLC shall collectively be referred to herein as the "Debtors."

[3] Capitalized terms not otherwise defined herein shall be afforded the same meaning as under the Lease. The term "Original Lease" shall refer to the Retail Center Deed of Lease Agreement dated December 29, 2009 as entered into between the Landlord's and Tenant's respective predecessors-in-interest prior to any amendments thereto.

      This Agreement shall confirm that: (i) Commencing August 1, 2025, the Debtors may remain in possession of the Premises and continue operating in the same subject to the Lease on a month-to-month tenancy as hereinafter provided with the only amount owing to the Landlord for such occupancy being an amount equal to fifty percent (50%) of the EBITDA derived from operations at the Premises prior to any charge for Rent (i.e. the Debtors' Earnings Before Interest, Taxes, Depreciation, and Amortization as calculated prior to the charge for Rent) as reported by the Debtors' for each thirty (30) day period of the Debtors' occupancy (the "Percentage Rent"). The Percentage Rent for each such period shall constitute an allowed administrative claim in the Bankruptcy Case and shall be due to the Landlord and payable on or before the eighth (8th) day of each month for the charge attributable to the preceding month; (ii) The Debtors shall continue operating their business in the Premises through at least 5 p.m. prevailing Eastern Time on August 31, 2025, in accordance with the terms of the Lease, as modified by this Letter Agreement, but otherwise through the Termination Date (defined herein); (iii) Either the Landlord or the Debtors may terminate this month-to-month tenancy upon thirty (30) days' prior written notice to the other party (with the effective date of such termination being the "Termination Date"). In the event of such termination, the Landlord and the Debtors shall cooperate in good faith to ensure an orderly surrender of the Premises to the Landlord to occur no later than three (3) business days after the Termination Date; and (iv) Through the time that the Debtors surrender the Premises to the Landlord Debtors shall cooperate in good faith with the Landlord to transition business operations in the Premises to a new operator as such may be identified by the Landlord. This Agreement is subject to approval by the Bankruptcy Court.

      Assuming that the Tenant and the Guarantor agree with the foregoing, please execute this Agreement via DocuSign or return a scan of your signatures.

      TRC LEESBURG RETAIL OWNER, L.L.C.,
a Delaware limited liability company

      By: TRC Leesburg Retail Venture, L.L.C., a Delaware limited liability company, its sole Member

      By: RMC-Leesburg, LLC, a Delaware limited liability company, Managing Member

      By: RMC-VAL, LLC, a Delaware limited liability company, Managing Member

      By: Rappaport Manager, LLC, a Delaware limited liability company, Manager

By: *Gary D. Rappaport*
      AF22B469076F4B4...
      Name: Gary D. Rappaport
      Title: Manager

Executed by the Landlord as of the ___ day of August 2025 (the "Effective Date")

**I HAVE READ THE ABOVE AND AGREE WITH THE TERMS AS OUTLINED THEREIN.**

                **TENANT:**

CB Theater Experience LLC,
a Delaware limited liability company

By: _____ (SEAL)
Print Name: Rafael Muñoz
Title: CEO
Date: 8/7/2025

                **GUARANTOR:**

Cinemex Holdings USA, Inc.,
a Delaware corporation

By: _____ (SEAL)
Print Name: Marel G. Ruiz
Title: Legal/Authorized Person
Date: 8/7/2025

**Exhibit C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

CINEMEX HOLDINGS USA, INC.,     Chapter 11 (Subchapter V)
CMX CINEMAS, LLC, and CB
THEATER EXPERIENCE LLC,³     Case No. 25-17559-LMI

    (Jointly Administered)

Debtors.
_____/

**ORDER GRANTING DEBTORS' AMENDED MOTION TO REJECT
CMX VILLAGE 14 LEASE EFFECTIVE AS OF JULY 31, 2025**

THIS MATTER came before the Court on August 12, 2025 at 2:00 p.m., upon the *Debtor's Amended Motion to Reject CMX Village 14 Lease Effective as of July 31, 2025* (the "Motion") filed by Cinemex Holdings USA, Inc. ("Cinemex Holdings"), CMX Cinemas, LLC ("CMX"), and CB Theater Experience, LLC ("CB Theater" and, with Cinemex Holdings and CMX, the

---

³ The Debtors in these cases and the last four digits of each Debtors' federal tax identification number are as follows: (1) Cinemex Holdings USA, Inc. (5502); (2) CMX Cinemas, LLC (1938); and (3) CB Theater Experience LLC f/k/a Cobb Theater Experience LLC f/k/a Cinemex NC, LLC (0563). The address for the Debtors is 4300 Biscayne Blvd, Suite 203, Miami, FL 33137.

2

4917-8694-5116, v. 1

"Debtors") (ECF No. ___). The Court, having reviewed the Motion and the supporting documents thereto, finds that it has jurisdiction over the matter pursuant to 28 U.S.C. § 1334, that the Motion was properly filed and served, that this is a core proceeding pursuant to 28 U.S.C. § 157(b). It is hereby ORDERED as follows:

    1.       The Motion is GRANTED.

    2.       The Debtors' rejection of the unexpired lease listed on **Exhibit A** to the Motion (the "Lease") with landlord TRC Leesburg Retail Owner, L.L.C. as successor-in-interest to CRP/TRC Leesburg Retail Owner, L.L.C. and Carlyle/Cypress Leesburg I, LLC (the "Landlord") is approved pursuant to 11 U.S.C. 365(a), effective as of July 31, 2025.

    3.       Commencing August 1, 2025, the Debtors may remain in possession of the leased premises and continue operating in the same subject to the Lease (the "Premises") on a month-to-month tenancy as hereinafter provided with the only amount owing to the Landlord for such occupancy being an amount equal to fifty percent (50%) of the EBITDA derived from operations at the Premises prior to any charge for Rent[1] (i.e. the Debtors' Earnings Before Interest, Taxes, Depreciation, and Amortization as calculated prior to the charge for Rent) as reported by the Debtors' for each thirty (30) day period of the Debtors' occupancy (the "Percentage Rent"). The Percentage Rent for each such period shall constitute an allowed administrative claim and shall be due to the Landlord and payable on or before the eighth (8th) day of each month for the charge attributable to the preceding month. The Debtors' entry into the Letter Agreement provided as **Exhibit B** to the Motion is APPROVED.

---

[1]     Capitalized terms not otherwise defined herein shall be afforded the same meaning as under the Lease.

4. The Debtors shall continue operating their business in the Premises through at least 5 p.m. prevailing Eastern Time on August 31, 2025, in accordance with the terms of the Lease, as modified by this Order, but otherwise through the Termination Date (defined herein).

5. Either the Landlord or the Debtors may terminate this month-to-month tenancy upon thirty (30) days' prior written notice to the other party (with the effective date of such termination being the "Termination Date"). In the event of such termination, the Landlord and the Debtors shall cooperate in good faith to ensure an orderly surrender of the Premises to the Landlord to occur no later than three (3) business days after the Termination Date.

6. Up through the Debtors' surrender of the Premises to the Landlord, the Debtors shall cooperate in good faith with the Landlord to transition business operations in the Premises to a new operator as such may be identified by the Landlord.

7. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8. This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

9. **Any proof of claim for damages arising from the rejection must be filed with the court on or before the latest of: i) the time for filing a proof of claim pursuant to Bankruptcy Rule 3002(c); ii) 30 days after the entry of the order compelling or approving the rejection of the contract or lease; or iii) 30 days after the effective date of the rejection of the contract or lease.**

# # #

4917-8694-5116, v. 1

Submitted By:
Jeffrey P. Bast
Bast Amron LLP
One Southwest Third Avenue
Suite 1400
Miami, Florida 33131
Telephone: 305-379-7904
Email: jbast@bastamron.com

-and-

Patricia B. Tomasco
Quinn Emanuel Urquhart & Sullivan, LLP
711 Louisiana, Suite 500
Houston, Texas 77002
Telephone: 713-221-7100
Email: pattytomasco@quinnemanuel.com

Copies to:

*Attorney Jeffrey P. Bast, who shall serve a copy of this order on all interested parties and file a certificate of service reflecting same.*