

ORDERED in the Southern District of Florida on August 28, 2025.

Laurel M. Isicoff, Judge
United States Bankruptcy Court
_____

*Tagged Opinion*

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 25-17559-BKC-LMI |
| CINEMEX HOLDINGS USA, INC., CMX CINEMAS, LLC, and CB THEATER EXPERIENCE LLC, | Chapter 11 (Subchapter V) Jointly Administered |
| Debtors. _____/ | |

### MEMORANDUM OPINION ON MOTION OF MN THEATERS 2006 LLC FOR AN ORDER DIRECTING THE APPOINTMENT OF <u>AN OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>

This matter came before the Court for hearing on July 29, 2025 at 10:30 a.m. (the "Hearing") upon the *Motion of MN Theaters 2006 LLC for an Order Directing the Appointment of an Official Committee of Unsecured Creditors* (ECF

1

#104) (the "Motion") filed by MN Theaters 2006 LLC ("MN Theaters") and the opposition to the Motion (ECF #116) (the "Opposition") filed by Cinemex Holdings USA, Inc. ("Cinemex Holdings"), CMX Cinemas, LLC, and CB Theater Experience LLC ("CB Theater" and, collectively with Cinemex Holdings and CMX Cinemas, LLC, the "Debtors"). On July 31, 2025, this Court entered its *Order Denying Motion of MN Theaters 2006 LLC for an Order Directing the Appointment of an Official Committee of Unsecured Creditors* (ECF #139) (the "Order"), denying the Motion without prejudice for the reasons stated on the record.[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.     The 2020 Bankruptcy

Due to detrimental effects of the COVID-19 pandemic (which caused the shutdown of all movie theaters and the furlough of almost all of the Debtors' workforce), Debtors Cinemex Holdings and CB Theater and non-Debtor Cinemex USA Real Estate Holdings, Inc. ("Cinemex Real Estate") (collectively, the "Reorganized Debtors") filed for chapter 11 protection before this Court on April 25 and 26, 2020 (the "2020 Bankruptcy").

On November 25, 2020, the Court confirmed the *Third Amended Joint Plan of Reorganization of Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc. and CB Theater Experience LLC* (Case No. 20-14695-LMI, ECF ##772 and 936) (the "Plan"). The Plan reflected the Reorganized Debtors' post-petition efforts to reorganize their business through a sale of their assets in a competitive

---

[1] The Court read its ruling into the record at the Hearing. *See* Tr. of 7/29/2025 Hearing (ECF #155). This memorandum opinion reduces that oral ruling to writing (with some additions and clean-up). However, neither the substance nor the conclusion of that ruling has been altered.

sales process (the "Asset Sale"). The Asset Sale culminated in the sale of Cinemex Holdings' new common stock to Wine and Roses, S.A. de C.V. ("Wine & Roses"), which was, at the time, an affiliate of the Debtors because both Wine & Roses and the Debtors were affiliates of Entretenimiento GM de Mexico S.A. de C.V. ("Entretenimiento"). The Plan went effective on December 18, 2020 (Case No. 20-14695-LMI, ECF #973).

## II. The Current Subchapter V Bankruptcy

On June 30, 2025 (the "Petition Date"), the Debtors filed for bankruptcy under Subchapter V in this Court (the "Subchapter V Petitions"). The Debtors operate 28 movie theaters in eight different states, including Florida (with multiple theaters in South Florida), Alabama, Georgia, Illinois, Minnesota, North Carolina, Ohio, and Virginia. Each of the 28 premises is leased. Through the Subchapter V cases, the Debtors' primary goals are to identify which theaters simply are not profitable, which ones are profitable, and which ones can be profitable; renegotiate or reject leases as needed; and renegotiate revenue-sharing agreements with studios, all in order to rebalance what has become economically untenable for companies in the movie theater industry.

As of the Petition Date, the Debtors claim total non-contingent, liquidated, non-affiliate obligations of approximately $1.9 million.[2] The Debtors also list a $50 million secured claim held by the Debtors' parent, Wine & Roses.

---

[2] Declaration of Rafael Muñoz Pedregal in Support of Subchapter V Petitions and First Day Motions (ECF #13); Ch 11 Case Management Summary (ECF #12); Declaration of Rafael Muñoz Pedregal, Pursuant to 11 U.S.C. § 1116(1) (ECF #59); Schedules (ECF ##72, 77, 79).

On July 2, 2025, Tarek Kiem was appointed as the Subchapter V trustee (the "Subchapter V Trustee") (ECF #27).

On July 22, 2025, MN Theaters filed the Motion, seeking the appointment of an official committee of unsecured creditors in these cases for cause pursuant to 11 U.S.C. §§1102(a)(3) and 1181(b). MN Theaters argues that "strong cause exists" for such appointment because: (1) there is a question of the Debtors' eligibility for Subchapter V[3]; (2) unsecured creditors have no unified voice or representation in the absence of an official committee; and (3) the $50 million secured claim of the Debtors' parent (Wine & Roses) should be investigated by a committee because that debt may be recharacterized as equity. Alternatively, MN Theaters urges the Court to expand the Subchapter V Trustee's powers pursuant to 11 U.S.C. §1183(b)(2), to direct him to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan" and to file a report of such an investigation pursuant to 11 U.S.C. §§1106(a)(3)-(4).

In its Opposition, the Debtors argue that MN Theaters has not met its burden of showing "cause" to either appoint a creditors' committee or to expand the Subchapter V Trustee's powers. The Debtors argue: (1) eligibility concerns are not supported by any evidence and no objection to eligibility has been filed[4];

---

[3] As of June 21, 2024, the maximum debt a small business can have to qualify for Subchapter V is $3,024,725. During the COVID-19 pandemic, Congress temporarily raised the Subchapter V debt limit to $7.5 million to provide relief to small businesses facing economic hardship. This increased limit was extended multiple times, but it expired on June 21, 2024.

[4] The deadline to challenge the Debtors' eligibility for Subchapter V is September 3, 2025.

4

(2) the Subchapter V Trustee already serves many of the roles that a creditors' committee would; and (3) with respect to the $50 million debt owed to Wine & Roses, Subchapter V provides tools to examine this debt and challenge it without the administrative expense of an official committee.

## ANALYSIS[5]

The Small Business Reorganization Act of 2019 (the "SBRA") became effective on February 19, 2020. The SBRA created a new Subchapter V of Chapter 11 of the Bankruptcy Code. Subchapter V "establishes an expedited process for small business debtors to reorganize quickly, inexpensively, and efficiently." *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 336-37 (Bankr. S.D. Fla. 2020). Congress recognized that chapter 11 cases can be "prohibitively expensive," and therefore created Subchapter V to allow qualifying debtors "to file bankruptcy in a timely, cost-effective manner." *Id.* at 339 (internal quotations omitted). Among the benefits of a Subchapter V case is that there is "no mandatory appointment of a creditors committee." *Id.* at 340. In an ordinary chapter 11 case, an official committee of unsecured creditors is appointed unless the local U.S. trustee cannot find unsecured creditors willing to serve; in a Subchapter V case, an unsecured creditors' committee is appointed only "for cause." *Compare* 11 U.S.C. §1102(a)(1) *with* §1102(a)(3).

---

[5] The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, as conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

5

In place of the committee, Subchapter V provides for the automatic appointment of a Subchapter V trustee, whose mandatory duties include examining proofs of claim, furnishing information to parties in interest, and facilitating the development of a consensual plan. 11 U.S.C. §§1183(b)(1) & (7), 704(a)(5) & (7); *see In re Peak Serum, Inc.,* 623 B.R. 609, 634 (Bankr. D. Colo. 2020) ("[T]he Court notes that Subchapter V affords no shortage of protections for creditors such as Atlas. For example, because appointment of a trustee is automatic in Subchapter V cases, Kutrubes would be subject to some level of oversight by a neutral third party."); 7 Collier on Bankruptcy ¶ 1102.04 (16th ed. 2025) ("The enhanced role of the United States trustee or that of a subchapter V trustee in cases involving small business debtors makes the appointment of a committee less necessary to protect the interests of unsecured creditors.").[6]

The Bankruptcy Code does not specify what constitutes "cause" to appoint a creditors' committee in a Subchapter V case pursuant to sections 1102(a)(3) and 1181(b).[7] However, whether to do so is within the Court's discretion. *See In re Wildwood Villages, LLC,* 2021 WL 1784408, at *4 (Bankr. M.D. Fla. 2021) ("While true that creditor committees are disfavored in Subchapter V cases, the

---

[6] *See* H. Rept. 116-171 (July 23, 2019), *available at* https://www.congress.gov/committee-report/116th-congress/house-report/171/1 (stating that Subchapter V provides for the appointment of a Subchapter V trustee because, among other things, "creditors in these smaller cases do not have claims large enough to warrant the time and money to participate actively in these cases").

[7] Section 1181(b) provides: "Unless the court for cause orders otherwise, paragraphs (1), (2), and (4) of section 1102(a) and sections 1102(b), 1103, and 1125 of this title do not apply in a case under this subchapter." 11 U.S.C. §1181(b). Section 1102(a)(3) provides: "Unless the court for cause orders otherwise, a committee of creditors may not be appointed in . . . a case under subchapter V of this chapter." 11 U.S.C. §1102(a)(3).

6

statute permits a bankruptcy court to use its discretion and appoint a creditors' committee in an appropriate case.").

Because Subchapter V was only recently enacted there is very little case law addressing what a court should consider in determining whether there is "cause" necessary to appoint a creditors' committee.

In a very early case, decided soon after Subchapter V was adopted, one court mused that "cause" to appoint a creditors' committee in a Subchapter V case requires a showing that its "existence will improve recoveries to creditors, will assist in the prompt resolution of this case, and is necessary to provide effective oversight of the debtors." *In re Bonert,* 619 B.R. 248, 254 (Bankr. C.D. Cal. 2020). In *Bonert,* the debtors re-designated their case as a Subchapter V case after a committee had been appointed in their pending chapter 11 case. The committee objected to the debtors' Subchapter V election. *Id.* at 252. In overruling the committee's objection to the Subchapter V election, the court stated it would "provide the Committee an opportunity to show cause why it should be permitted to continue in existence after the Debtors' Subchapter V election takes effect" citing to section 1102(a)(3). *Id.* at 253-54. Ultimately, the committee did not oppose its own disbandment following the Subchapter V election and so no committee remained in place after the case was converted to a Subchapter V case.[8]

---

[8] *In re Bonert*, Case No. 2:19-bk-20836-ER, ECF #278 (Bankr. C.D. Cal. June 18, 2020).

7

The Court finds that the additional cases cited by MN Theaters in support of its Motion are either not applicable or not persuasive. In *Wildwood Villages,* 2021 WL 1784408, at *7, the court, in denying a motion to allow a class proof of claim, acknowledged that creditors' committees are "disfavored" in Subchapter V cases, stated that it "can envision possible scenarios where a creditors' committee or a class claim may be an efficient and appropriate vehicle in a Subchapter V case, particularly while the debt limits are set at a higher level," but did not provide any other detail, nor did it elaborate on any of those "possible scenarios." Indeed, the court's remark did not even rise to the level of dicta; it was more in the nature of a reflection. In *In re Haskell-Dawes, Inc.,* 188 B.R. 515 (Bankr. E.D. Pa. 1995), the court addressed a pre-Subchapter V statute in which a small business debtor sought to prohibit the appointment of a creditors' committee. The court did not analyze a request to appoint a creditors' committee, nor did it appoint a creditors' committee. Equally inapplicable, and unpersuasive are the cases cited by MN Theaters addressing appointment of additional committees in traditional chapter 11 cases; the statutory framework for appointing a committee in a Subchapter V case arises in a different context.

The parties only cited to one case, and the Court has not located any additional cases, in which a court appointed an official committee in a Subchapter V case. *In re Sharity Ministries Inc.,* Case No. 21-11001 (JTD), Tr. of Aug. 9, 2021 Hr'g. ECF #130 at 61-63 (Bankr. D. Del. Aug. 10, 2021).[9]  MN Theaters cites to *Sharity* in support of its argument that a committee should be

---

[9] An excerpt of the transcript is attached as Ex. B to the Motion.

8

appointed in this case to provide the unsecured creditors with a "unified voice." However, as the Debtors point out, a review of the *Sharity* docket shows the facts that led to the court's appointment of a committee is distinguishable from the facts present in this case. In *Sharity*, a bankruptcy judge ordered the appointment of a member committee *sua sponte* so that the approximately 10,000 members could "have a voice" in their treatment "without individual members having to incur the costs of doing so." *Id.* The appointment of the committee came after the U.S. Trustee sought to remove the debtor in possession or to authorize the Subchapter V trustee to investigate the debtor's financial affairs, arguing that "cause" existed because the debtor was grossly and incompetently managing its affairs to the detriment of stakeholders.[10] The U.S. Trustee provided evidence that the debtor had misled its members, was an insurance company operating without licensure and regulation, and that a substantial amount of the members' contributions were used to pay a third party rather than the members' medical expenses.[11] The states of California, Massachusetts, Texas, Washington, and Wisconsin, along with the New Hampshire Department of Insurance and the New York State Department of Financial Services, joined in the U.S. Trustee's request.[12] It was against this backdrop that the court in *Sharity* expanded the Subchapter V trustee's role to include investigating the debtor's financial affairs, appointed a committee of

---

[10] *In re Sharity Ministries Inc.*, Case No. 21-11001 (JTD), ECF #68 (Bankr. D. Del. July 22, 2021).
[11] *In re Sharity Ministries Inc.*, Case No. 21-11001 (JTD), ECF #68 (Bankr. D. Del. July 22, 2021).
[12] *In re Sharity Ministries Inc.*, Case No. 21-11001 (JTD), ECF ##89, 93 (Bankr. D. Del. July 30, 2021).

9

members, and deferred the appointment of a liquidating trustee until the member committee had an opportunity to weigh in.

Other than *Sharity*[13], the Court has not located any case that addresses standards the Court should consider in determining whether there is "cause" to appoint a creditors' committee under sections 1102(a)(3) and 1181(b). Having considered the statutory framework of Subchapter V, the Court finds that guidance comes from the provisions relating to the expansion of a Subchapter V trustee's duties pursuant to section 1183(b)(2) and the provisions addressing the extreme circumstances of removal of a Subchapter V debtor in possession pursuant to 11 U.S.C. §1185.

Under section 1183(b)(2), the Court may "for cause" order that a Subchapter V trustee's powers are expanded to include the powers specified in sections 1106(a)(3)-(4). 11 U.S.C. §1183(b)(2).[14] These expanded powers include a more significant role in investigating the "acts, conduct, assets, liabilities, and financial condition of the debtor", 11 U.S.C. §1106(a)(3), and reporting on the investigation, especially with respect to facts "pertaining to fraud, dishonest, incompetence, misconduct or mismanagement." 11 U.S.C. §1106(a)(4). Grounds for expanding a Subchapter V trustee's authority under section 1183(b)(2) include "substantial issues about potential insider claims, . . . significant questions such as the debtor's true financial condition, what property is property

---

[13] The musings of the *Bonert* and *Wildwood Villages* courts do not provide any guidance whatsoever.
[14] "The trustee shall perform the duties specified in paragraphs (3), (4), and (7) of section 1106(a) of this title, if the court, for cause and on request of a party in interest, the trustee, or the United States trustee, so orders." 11 U.S.C. §1183(b)(2).

10

of the estate, the debtor's management of the estate as debtor in possession, and the accuracy and completeness of the debtor's disclosures and reports." *In re Corinthian Communications, Inc.,* 642 B.R. 224, 233 (Bankr. S.D.N.Y. 2022). Although the Subchapter V trustee's investigation may lead to removal of a debtor in possession pursuant to section 1185, the standard for "cause" under section 1183(b)(2) is something less than the standard for "cause" for removal of a Subchapter V debtor in possession under section 1185(a). *See id.* at 233; 8 Collier on Bankruptcy ¶ 1183.03[3] (Richard Levin & Henry J. Sommer eds., 16th ed.).

Under section 1185(a) sufficient cause to remove a Subchapter V debtor as debtor in possession includes "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case … or for failure to perform the obligations of the debtor under a plan confirmed under this subchapter." 11 U.S.C. §1185(a).

With respect to appointment of a committee in Subchapter V cases as set forth in section 1102(a)(3), Collier observes:

> The duties of the subchapter V trustee under section 1183(b)(1), together with the trustee's additional duties under section 1183(b)(2) that the court can order for cause, will enable the subchapter V trustee to protect the interests of unsecured creditors in most small business debtor cases without the need for a committee.
>
> The provisions authorizing the court to appoint a committee for cause allows the court to take into account all of the relevant facts and circumstances. The court will balance the potential cost of a committee against the need to protect the interests of creditors in the reorganization process, taking into account the enhanced role of the United States trustee or the appointment of a subchapter V trustee.

7 Collier on Bankruptcy ¶ 1102.04[1] (Richard Levin & Henry J. Sommer eds., 16th ed.). In sum, in determining whether a committee should be appointed in a Subchapter V case a court should take into consideration factors that cannot, or logically should not, be addressed by the remedies provided by section 1183(b)(2) or factors which rise to the level of cause for removal of a debtor in possession under section 1185.

Accordingly, in exercising its discretion, the Court must consider balancing the potential cost of a committee against the need to protect the interests of creditors; in other words, whether the needs of moving the case forward and controlling costs is outweighed by the needs of the creditors. Considering the enhanced role of a Subchapter V trustee, the Court determines that the following non-exclusive list of factors should be considered by a court when determining whether there is "cause" to appoint a creditors' committee in a Subchapter V case pursuant to sections 1102(a)(3) and 1181(b):

(a) the size and complexity of the case (whether the case is one which more closely resembles a traditional chapter 11 case);

(b) the number of creditors involved in the case and the nature of their debt;

(c) the nature of the debtor's assets;

(d) the nature of the debtor's business and how it is regulated;

(e) the amount of secured debt, the number of secured creditors, and the nature of the collateral in which such creditors assert a lien;

(f) whether and to what extent any other creditor or other party in interest supports the relief requested;

(g) whether there are any other factors present in the case which, notwithstanding section 1183(b)(2), would interfere with the ability of the Subchapter V trustee to perform his or her normal statutory duties effectively.

In applying these factors to this case, the Court finds that MN Theaters has not established sufficient cause to appoint a creditors' committee at this time. First, this case is not a complex case. While the Reorganized Debtors previously filed and successfully reorganized under a traditional chapter 11 case, these cases were filed under Subchapter V with the primary and limited goal of shedding leases (of which there are only 28)—that is not complicated.

Second, MN Theaters' argument that the amount of the Debtors' unsecured debt is "close to the debt ceiling", even if true, is not persuasive. Congress set the debt limit and if the Debtors qualify to seek relief under Subchapter V, they qualify, even if only one penny under the ceiling.

Third, MN Theaters' argument that the unsecured creditors in these cases need a "unified voice" is not supported by the number of creditors in these cases or the nature of their debt. The unsecured creditors in these cases are primarily landlords, with some vendors.  The number of scheduled creditors is in the hundreds at most; these cases are not like the one in *Sharity* where there were 10,000 members that needed a "unified voice."

13

Fourth, MN Theaters' argument that the $50 million intercompany debt needs to be investigated by a committee is not "cause" for appointment of a committee. The Subchapter V Trustee can investigate the insider secured claim and object to the allowance of any improper claim; because no plan has been filed yet, no one even knows how the Debtors propose to treat the insider claim; and once a plan is filed, MN Theaters and the Subchapter V Trustee have the right to object to that plan.

Fifth, no other party in interest joined in MN Theaters' Motion.

Finally, there is no other factor present that would interfere with the Subchapter V Trustee's exercise of his normal statutory duties.

## CONCLUSION

For the reasons outlined at the Hearing and in this Memorandum Opinion, MN Theaters has not established sufficient "cause" for appointment of a committee under sections 1102(a)(3) and 1181(b). For the same reasons, MN Theaters has not established "cause" to expand the Subchapter V Trustee's duties under section 1183(b)(2).

Accordingly, it is **ORDERED**: the Motion is denied without prejudice.

# # #

Copy furnished to:
Patricia B. Tomasco, Esq.

*Attorney Tomasco is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry of the Order.*