UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

CINEMEX HOLDINGS USA, INC.,
CMX CINEMAS, LLC, and CB
THEATER EXPERIENCE LLC,[1]

Chapter 11 (Subchapter V)

Case No. 25-17559-LMI

(Jointly Administered)

Debtors.

_____/

## AMENDED PLAN OF REORGANIZATION

**Background for Cases Filed Under Subchapter V**

### A.    Description and History of the Debtors' Business

Debtors Cinemex Holdings USA, Inc. ("Cinemex Holdings"), CMX Cinemas, LLC ("CMX Cinemas"), and CB Theater Experience LLC ("CB Theater", and together with Cinemex Holdings and CMX Cinemas, "Cinemex" or the "Debtors") are in the movie theater business. In terms of organizational structure, Cinemex Holdings (which was incorporated in Delaware in 2014) is the entity that owns and holds 100% of the interests in CB Theater (incorporated in Delaware in 2017) and CMX Cinemas (incorporated in Delaware in 2020). Cinemex is based in Miami.

Cinemex operates twenty-five movie theaters in seven different states, including Florida (with multiple theaters in South Florida), Alabama, Georgia, Illinois, North Carolina, Ohio, and Virginia. The theaters operate under the brand names "CMX Cinemas" and "CMX CinéBistro."

---

[1]     The Debtors in these cases and the last four digits of each Debtors' federal tax identification number are as follows: (1) Cinemex Holdings USA, Inc. (5502); (2) CMX Cinemas, LLC (1938); and (3) CB Theater Experience LLC f/k/a Cobb Theater Experience LLC f/k/a Cinemex NC, LLC (0563). The address for the Debtors is 4300 Biscayne Blvd, Suite 203, Miami, FL 33137.

Cinemex's core business is within a niche market of the movie theater industry of "dining theaters." The concept behind Cinemex is to provide guests with an all-inclusive going-out experience: guests can dine, drink and attend a movie by going to a single location. It thus maintains fine dining restaurants and bars on site, offering guests the opportunity to order high quality food and drinks from their seats during the movie. Furthermore, Cinemex offers state-of-the-art technology (*e.g.*, IMAX, 3D and surround sound) and amenities such as full reclining seats. Most of the theaters are located in shopping malls, while fewer than 10 are housed in standalone buildings.

As a result of the detrimental effects of the COVID-19 pandemic (which caused the shutdown of all movie theaters and the furlough of almost all of Cinemex's workforce), Debtors Cinemex Holdings and CB Theater and non-Debtor Cinemex USA Real Estate Holdings, Inc. (collectively, the "Reorganized Debtors") filed for chapter 11 protection before this Court on April 25 and 26, 2020 ("2020 Bankruptcy"). On November 25, 2020, the Court confirmed the *Third Amended Joint Plan of Reorganization of Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc. and CB Theater Experience LLC* [Case No. 20-14695, Docket Nos. 772 and 936] ("2020 Plan"). The 2020 Plan was a reflection of the Reorganized Debtors' post-petition efforts to reorganize their business through a sale of their assets ("Asset Sale"). The Asset Sale entailed the sale of Cinemex Holdings' common stocks to Wine and Roses, S.A. de C.V. ("Wine & Roses"), which was at the time an affiliate of the Debtors, because both Wine & Roses and the Debtors were affiliates of Entretenimiento GM de Mexico S.A. de C.V.

After the 2020 Plan's confirmation, the long-term effects of the COVID-19 and shifting consumer behavior, however, continued to impact Cinemex's business. In addition, Cinemex was financially impacted by (i) lease obligations entered into in a different market environment; and

2

(ii) film distributor obligations not reflective of the challenges faced by theater operators.

During the Subchapter V Cases, Cinemex has (i) identified which theaters are not profitable, which ones are currently profitable, and which ones can be made profitable; (ii) accordingly rejected certain theater leases; and (iii) sought to renegotiate leases with landlords and revenue-sharing agreements with studios.

Cinemex intends to apply its projected disposable income from future earnings, which derive from the operation of its theaters, to provide for semi-annual distributions to creditors. The semi-annual distributions shall occur by June 30, 2026, December 31, 2026, June 30, 2027, December 31, 2027, June 30, 2028, and December 31, 2028. Cinemex also intends to use available cash to provide for payment on the Effective Date (as defined below) of allowed administrative claims[2] and allowed priority claims.

The Debtors' anticipated expenses and revenues are included within the projections annexed as **Exhibit "A"** (the "Projections"). The Debtors reserve the right to amend or supplement Exhibit A. As reflected in the Projections, the Debtors anticipate sufficient projected disposable income to make distributions to general unsecured creditors.

### B.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such creditors would receive in a hypothetical chapter 7 liquidation. The liquidation analysis required by 11 U.S.C. § 1190 is annexed as **Exhibit "B"**. The Debtors reserve the right to amend or supplement Exhibit B.

### C.    Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Plan proponents must also show that they will have enough cash over the life of the

---

[2] The word "Claim" or "claim" is as defined in § 101(5) of the Bankruptcy Code.

Plan to make the required Plan payments.  The Projections demonstrate the Debtors' ability to make all payments required by the Plan.  *See* 11 U.S.C. § 1190.

The Projections also demonstrate that the Debtors' projected disposable income (as defined by § 1191(d) of Title 11 of the U.S. Code (the "Bankruptcy Code")) for the three-year plan period will be applied to make payments under the Plan as described in § 1191(c)(2)(A) and that the value of the property to be distributed under the Plan is not less than the projected disposable income of the Debtors, as described in § 1191(c)(2)(B).

The final Plan payment will be paid around December 2028, or about 38 months after the Effective Date of the Plan, unless the Debtors – in its sole discretion – elects to prepay all or part of the projected disposable income in Exhibit "A", with such prepayments being applied to reduce the duration of the Plan by applying such payments to the last required quarterly payment(s) not already prepaid in full pursuant to this provision.

> ***You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.***

## ARTICLE 1: SUMMARY

The Plan under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtors from the Debtors' revenues.

This Plan provides for:

| | |
|---|---|
| 1 | class of priority claims; |
| 1 | class of secured claims; |
| 1 | class of non-priority unsecured claims; |
| 1 | class of subordinated secured claims; and |
| 1 | class of interests. |

**Payment of allowed administrative expenses and allowed priority claims.**  The Plan provides for full payment of allowed administrative expenses and priority claims as reflected in

4

the Projections.

**Payment of allowed secured claims.** The Plan provides for allowed secured claims (excluding the asserted claims of Wine & Roses, S.A. de C.V. (the "Wine & Roses Claim")): (1) to be reinstated and paid pursuant to their terms; (2) to be paid in full in cash; (3) to be delivered the collateral securing any such claim and payment of any interest required under section 506(b) of the Bankruptcy Code; or (4) to receive such other treatment so as to leave such claim unimpaired. The Debtors are not aware of any asserted secured claims other than the Wine & Roses Claim (which, for the avoidance of doubt, is being separately classified and subordinated).

**Payment of allowed non-priority unsecured claims.** The Plan provides for payment of non-priority unsecured claims on a pro rata basis as reflected in the Projections, which the proponent of this Plan has valued at approximately 100 cents on the dollar.

**Subordination of asserted claim of Wine & Roses, S.A. de C.V.** The plan provides for the Wine & Roses Claim to be subordinated to the claims of all other creditor classes. The Wine & Roses Claim shall not receive any distributions from the Debtors until such time as the distributions provided for in the Projections have been satisfied in full.

All creditors should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

*The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the plan if the court finds that the plan accords "fair and equitable" treatment to the class rejecting it.*

*Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)*

4934-2923-9398, v. 1

## ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    **: Class 1**.  All allowed claims entitled to priority under § 507(a) of the Code (except administrative expenses under § 507(a)(2) and priority tax claims under § 507(a)(8)).

2.02    **: Class 2**.  To the extent allowed under § 502 of the Code, any secured claims other than the Wine & Roses Claim.

2.03    **: Class 3**.  All non-priority unsecured claims allowed under § 502 of the Code.

2.04    **: Class 4.**  To the extent allowed under § 502 of the Code, the Wine & Roses Claim.

## ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

3.01    **: Unclassified claims.**  Under section § 1123(a)(1), allowed administrative expenses and priority tax claims are not in classes.

3.02    **: Administrative expenses.**  Administrative expenses allowed under § 503 of the Code will be paid in full on the Effective Date (as defined below at Section 8.02) of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    **: Priority tax claims.**  Each holder of an allowed priority tax claim will be paid in full in the following manner: (i) on the Effective Date; (ii) over a period not to exceed three years after the petition date of June 30, 2025 (the "Petition Date") with post-confirmation interest as determined under § 511; or (iii) upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.04    **: Statutory fees.**  All unpaid fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of the Plan will be paid on or before the Effective Date. The Debtors are not aware of any unpaid statutory fees.

3.05    **: Prospective quarterly fees.**  All quarterly fees, if any, required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed,

6

or converted to another chapter of the Code. The Debtors are not aware of any obligation for prospective quarterly fees.

## ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

### 4.01: Claims and interests are treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – **Priority claims** excluding those in Article 3 | Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the latest of (i) the Effective Date, (ii) the date on which such Claim is allowed by a final non-appealable order, or (iii) the date after the Effective Date on which such Claim becomes due pursuant to applicable law. The Debtors are not aware of any Class 1 Priority Claims. This class is unimpaired and not entitled to vote on the Plan. |
| Class 2 – **Secured claims other than the Wine & Roses Claim** | Unimpaired | At the election of the Debtors, the Class 2 Claims shall be (i) reinstated pursuant to § 1124 of the Bankruptcy Code, with (a) all of the legal, equitable and contractual rights to which such Class 2 Claim entitles such holder against the Debtor(s) in respect of such Claim shall be fully reinstated and retained; (b) the maturity of such Claim shall be reinstated; and (c) all amounts owed in respect of such Claim, including any default amounts existing on the Effective Date, shall be paid in full on the later of the Effective Date and the date such amount otherwise becomes due and payable under the agreement corresponding to the Claim, as reinstated; (ii) paid in full in Cash over the term of the Projections, with interest at the federal judgment rate of 28 U.S.C. § 1961; (iii) delivered the collateral securing such Claim plus any interest as required by § 506(b) of the Bankruptcy Code; or (iv) delivered the indubitable equivalent of such Claim. The Debtors are not aware of any Class 2 Claims. This class is unimpaired and not entitled to vote on the Plan. |

4934-2923-9398, v. 1

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 3 – **Non-priority unsecured creditors** | Impaired | The Plan provides for payment of non-priority unsecured Claims on a pro rata basis and without interest as reflected in the Projections. This class is impaired and entitled to vote on the Plan. |
| Class 4 – **Wine & Roses Claim** | Impaired | The Plan provides for the Wine & Roses Claim (i) to be subordinated to the Claims in all other Classes until the earlier of (a) the payment of the non-priority unsecured Claims in full and (b) the making of the full amount of distributions provided for in the Projections and (ii) to receive no distributions under the Projections. This class is impaired and entitled to vote on the Plan. |
| Class 5 – **Equity and Membership Interests** | Unimpaired | The equity or membership interests in each of the Debtors (as the case may be) shall be reinstated and left unimpaired. This class is unimpaired and not entitled to vote on the Plan. |

## ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS OR INTERESTS

5.01   **: Disputed claim or interest.**  A *disputed claim* or *disputed interest* is a claim or interest that has not been allowed or disallowed and as to which either:

(i)   A proof of claim or interest has been filed or deemed filed, and the Debtors or another party in interest have filed an objection; or

(ii)   No proof of claim or interest has been filed, and the Debtors have scheduled such claim or interest as disputed, contingent, or unliquidated or filed an objection thereto.

5.02   **: Disallowance of certain Claims with no proof of claim filed.**  Pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(2), any Claim which was not scheduled or was scheduled as disputed, contingent, or unliquidated and for which no proof of claim was filed by the claims bar date of September 8, 2025 (or December 29, 2025 for claims of governmental units (as defined in § 101(27) of the Bankruptcy Code)) is disallowed, and the holder of such Claim shall not be treated as a creditor with respect to such Claim for the purposes of voting and

distribution.

5.03    **: Delay of distribution on a disputed claim or interest.**  No distribution will be made on account of a disputed claim or interest unless and until it is allowed.  To the extent such a disputed claim arises, the Debtors shall hold back the amounts to be paid pursuant to the Projections on account of such disputed claim, with such funds either (i) being distributed on account of the disputed claim if such claim becomes allowed or (ii) being distributed pro rata on account of the allowed non-priority unsecured claims if such claim becomes disallowed.

5.04    **: Settlement of disputed claims or interests.**  The Debtors will have the power and authority to settle and compromise a disputed claim or interest with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

5.05    **: Time for filing objections to claims or interests.**  As of the Effective Date, objections to, and requests for estimation of, claims or interests against the Debtors may be interposed and prosecuted only by the post-confirmation Debtors.  Such objections and requests for estimation shall be served and filed (i) on or before the one hundred and eightieth (180th) calendar day following the later of (a) the Effective Date and (b) the date that a proof of claim or interest is filed or amended or a claim or interest is otherwise asserted or amended in writing by or on behalf of a holder of such claim or interest or (ii) such later date as ordered by the Court upon a motion filed by the post-confirmation Debtors.

## ARTICLE 6: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a)    The Debtors assume, and if applicable assign, as of the Effective Date of the Plan, the Debtors' executory contracts and unexpired leases, excluding (i) those that previously were assumed, assumed and assigned, or rejected by the Debtors, (ii) those that may be listed on a supplement to the Plan (the "Plan Supplement") to be filed by the Debtors at or prior to

4934-2923-9398, v. 1

confirmation, and (iii) those that are the subject of a motion to reject executory contracts or unexpired leases as of the date of entry of the Confirmation Order. The Plan Supplement will also provide, for the assumed executory contracts and unexpired leases, the proposed cure amounts for such executory contracts and unexpired leases, information relating to any amendments to such executory contracts and unexpired leases, and the procedures for objecting to assumption, assignment, and such cure amounts. For the avoidance of doubt, each such assumed executory contracts and unexpired leases shall be assumed by the Debtor(s) that is/are a party(ies) to such executory contract or unexpired lease.

(b)      Except for executory contracts and unexpired leases that have been rejected before the Effective Date, that are the subject of a pending motion to reject, or that were assumed pursuant to an order of the Court providing for a date other than the Effective Date, the Debtors will be conclusively deemed to have assumed all executory contracts and unexpired leases as of the Effective Date.

Entry of an order confirming the Plan shall constitute a court order approving the assumptions, assumptions and assignments, or rejections of the executory contracts or unexpired leases (including as amended) as set forth in the Plan or the supplement to the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract or unexpired lease assumed pursuant to the Plan or any order of the Court shall re-vest in, and be fully enforceable by, the reorganized Debtors in accordance with its terms, except as such terms are modified by the Plan or any order of the Court authorizing and providing for its assumption or rejection under applicable federal law.

**To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports**

**to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.** The Debtors reserve the right on or before the Effective Date, to amend the Plan Supplement to add or remove any executory contract or unexpired lease.

Assumption or assumption and assignment, as applicable, of any executory contract or unexpired lease pursuant to the Plan or otherwise, shall result in the full and final satisfaction, settlement, release, and discharge of any Claims or defaults, subject to satisfaction of the cure amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of the assumption or assumption and assignment, as applicable. No party to any assumed executory contract or unexpired lease may attempt to collect any such Claims or defaults through any other means or otherwise discriminate against the Debtors on account of the assumption of the executory contract or unexpired lease or the filing of the Chapter 11 Cases.  Any proofs of claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned, as applicable, shall be deemed disallowed and expunged, without further notice to, or action, order or approval of, the Bankruptcy Court or any other Entity, upon the deemed assumption of such executory contract or unexpired lease.

Any objection by a contract or lease counterparty to a proposed assumption or assumption and assignment of an executory contract or unexpired lease or the related cure amount (including

11

as set forth in the Plan Supplement) must be filed, served, and actually received by the Debtors by the later of (i) the deadline set by the Court for objecting to confirmation of the Plan and (ii) five days after the filing of the Plan Supplement, if such supplement is filed with respect to the executory contract or unexpired lease of such contract or lease counterparty.  Any counterparty to an executory contract or unexpired lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption and the proposed cure amount.

**Any proof of claim for damages arising from the rejection must be filed with the court on or before the latest of: i) the time for filing a proof of claim pursuant to Bankruptcy Rule 3002(c); ii) 30 days after the entry of the order compelling or approving the rejection of the contract or lease; or iii) 30 days after the effective date of the rejection of the contract or lease.**

**ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN**

The Debtor estimates revenues will be generated from the Debtor's ongoing operations.

Pursuant to 11 U.S.C. § 1141(b), upon the Effective Date of the Plan (as defined in Article 8.02), all property and assets of the Debtors shall re-vest in the Debtors, free and clear of all Claims, liens, encumbrances, charges, and other interests, but excluding any allowed secured Claims and liens of Wine & Roses, S.A. de C.V. Such vesting does not constitute a voidable transfer under the Code or applicable non-bankruptcy law.

Except as otherwise provided in this Plan, nothing contained in the Plan shall be deemed to be a waiver or relinquishment of any rights or causes of action that the Debtors may choose to assert under any provision of the Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a defense and (ii) the turnover of any property of the Debtors' estate.

## ARTICLE 8: GENERAL PROVISIONS

8.01    **: Definitions and rules of construction.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

"Causes of Action" shall mean any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest claims or interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 551, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

The "Chapter 11 Cases" shall mean, collectively:  (a) when used with reference to a particular Debtor, the case pending for that Debtor under Chapter 11 of the Bankruptcy Code in the Court; and (b) when used with reference to all the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Court.

The "Court" shall mean the Bankruptcy Court for the Southern District of Florida.

The "Effective Date" shall have the meaning provided in Article 8.02.

"Exculpated Parties" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the reorganized Debtors; and (c) with respect to each of the foregoing (a) through (b),

4934-2923-9398, v. 1

such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former members, equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, predecessors, successors, assigns, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, restructuring advisors, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided*, *however*, Wine & Roses S.A. de C.V. shall not be an Exculpated Party in its capacity as a lender to the Debtors.

8.02    **: Effective Date.** The Effective Date of this Plan is the day that is 14 days after the entry of an order confirming this Plan (the "Confirmation Order").  If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the date that is five business days after the date on which the stay expires or is otherwise terminated.  These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

8.03    **: Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    **: Binding effect.** The rights and obligations of any entity named or referenced in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.05    **: Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    **: Controlling effect.** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this

4934-2923-9398, v. 1

Plan, except as otherwise provided in this Plan.

8.07    **: Corporate Governance.**  The Debtors' charters shall be deemed amended to prohibit the issuance of nonvoting equity securities and to provide, that holders of voting securities shall retain their power to vote as well as the right to the election of directors or managers representing such securities in the event of default in the payment of dividends.  Upon the Effective Date, (i) the sole director of the board of Cinemex Holdings shall be Ximena Carreño and the sole manager of CMX Cinemas and CB Theater shall be Cinemex Holdings, and (ii) Rafael Muñoz Pedregal shall continue to serve as President of the Debtors.

8.08    **: Retention of Jurisdiction.**  The Court may exercise jurisdiction to the full extent necessary to administer this case after confirmation and to adjudicate any related adversary proceedings, claim objections, or contested matters, including without limitation those concerning the construction, implementation, or modification of the Plan or Confirmation Order.  Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

In addition to the foregoing, the Court shall retain jurisdiction to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after Plan confirmation related to potential litigation claims held by the Debtors against third parties.

## ARTICLE 9: DISCHARGE

If the Debtor's Plan is confirmed under § 1191(a),[3] on the Effective Date of the Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent

---

[3] 11 U.S.C. § 1191(a) provides: "The court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met."    Confirmation under § 1191(a) may be referred to as a so-called "consensual" confirmation.

specified in § 1141(d)(5) of the Code, except that the Debtors will not be discharged from any debt:

      (i)  imposed by this Plan; or

      (ii)  to the extent provided in § 1141(d)(6).

If the Debtors' Plan is confirmed under § 1191(b),[4] confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of the payment of the projected disposable income reflected in the Projections, or as otherwise provided in § 1192 of the Code. The Debtors will not be discharged from any debt:

      (i)  on which the last payment is due after the first three years of the Plan, or as otherwise provided in § 1192;

        or

      (ii)  excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Whether the Plan is confirmed under § 1191(a) or § 1191(b), the Plan payments will be made directly by the Debtors. If the Plan is confirmed under § 1191(a), the service of the Subchapter V Trustee shall terminate upon substantial consummation of the Plan. If the Plan is confirmed under § 1191(b), the Subchapter V Trustee shall be discharged from his duties upon closure of the bankruptcy case.

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to,**

---

[4] 11 U.S.C. § 1191(b) provides: "Notwithstanding section 510(a) of this title, if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." Confirmation under § 1191(b) may be referred to as a so-called "non-consensual" confirmation.

4934-2923-9398, v. 1

**or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Plan, or any restructuring transaction, contract, instrument, release, or other agreement or document (including the reliance by any Exculpated Party on the Plan or the Confirmation Order) created or entered into in connection with the Plan, the filing of the Chapter 11 Cases, the negotiation, terms, or execution of any settlement agreements effectuated pursuant to Federal Rule of Bankruptcy Procedure 9019 in the Chapter 11 Cases, the pursuit of confirmation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement in connection with the Plan, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

**ARTICLE 10: OTHER PROVISIONS**

a)      The Plan shall be deemed substantially consummated upon (A) transfer of all or substantially all of the property proposed by the Plan to be transferred; (B) assumption by the Debtors or by the successor to the Debtors under the plan of the business or of the management of all or substantially all of the property dealt with by the Plan; and (C) commencement of distribution under the Plan, which the Plan provides to occur on the Effective Date.

b)      Pursuant to 11 U.S.C. §§ 362(c)(2) and 362(a), the automatic stay – among other

things – shall continue to apply to the Debtors and the Debtors' property as re-vested in the Debtors until the earlier of the time that the case is closed or the case is dismissed.

       c)      After the Effective Date, the Debtors may without further notice to or action, order, or approval of the Court (i) employ and pay professionals and (ii) pursue, compromise, and settle Causes of Action against other Entities and Persons.  In accordance with section 1123(b) of the Bankruptcy Code, the reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action belonging to the Debtors, whether arising before or after the Petition Date, and the reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date

       d)      For administrative purposes to facilitate distributions, the Plan provides for (i) non-priority unsecured claims to be paid on a pro rata basis pursuant to the Projections and (ii) claims against a Debtor and a guaranty of that claim by another Debtor to be treated as one claim.  For purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors shall be treated as separate entities so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may not be set off against the liabilities of any of the other Debtors.  Moreover, such administrative consolidation shall not affect any subordination provisions set forth in any agreement relating to any claim or the ability of the reorganized Debtors to seek to have any claim subordinated in accordance with any contractual rights or equitable principles.

       e)      Consistent with § 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, contract, entitlement, franchise, or other similar grant to, condition such a grant to, discriminate

4934-2923-9398, v. 1

with respect to such a grant against, the reorganized Debtors, or another Entity with whom the reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

f)      Unless otherwise specifically set forth above, in the event of any default by the Debtors of any payment required by Article 3 or ¶ 4.01 above, the Claimant shall provide the Debtors with notice of such default, by electronic mail to the Debtors' attorneys, Jaime B. Leggett, Esq., Jeffrey P. Bast, Esq., and Patty Tomasco, Esq. (at jleggett@bastamron.com, jbast@bastamron.com, jmiranda@bastamron.com, and pattytomasco@quinnemanuel.com) and by facsimile to the Debtor's attorneys, Jaime B. Leggett, Esq. and Jeffrey P. Bast, Esq. (at (786) 206-8740) (the "Default Notice"). The Debtors shall be afforded ten (10) days from the date of the electronic mail and facsimile receipt by the Debtors' counsel of such Default Notice to cure such default (the "Cure Period"), or to seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193.

g)      **Creditor Default.** On and after the Effective Date, any act or omission by a holder of a Claim or an Interest in contravention of the provisions of the Plan shall be deemed an event of default under the Plan. Upon an event of default, the reorganized Debtors may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs in remedying such default.  Upon the finding of such a default by a creditor, the Court may: (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award judgment against such defaulting

19

creditor in favor of the reorganized Debtors in an amount, including interest, to compensate the reorganized Debtors for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

h)    Pursuant to 11 U.S.C. § 1191(c)(3)(B), the condition that this Plan be fair and equitable with respect to each class of claims or interests includes, without limitation, the requirement that the Plan include "appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made." As such, if this Plan is confirmed under 11 U.S.C. § 1191(b), then in the event that the Debtors are in Default of this Plan, the Subchapter V Trustee shall provide all creditors and equity interest holders with notice of such Plan Default. In the event that the Debtors do not cure a default or otherwise seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193, within the Cure Period, which modification is subsequently approved by the Court, then the Debtors shall be deemed in Default of this Plan and the Claimants and the Subchapter V Trustee shall then be entitled to move to reopen this proceeding, file a Notice of such Default with the Court, and seek conversion of this case to a case under Chapter 7 and/or seek relief to assert claims pursuant to the Plan against the Debtors for the amounts not paid as required by the Plan. The Plan does not provide for the Debtors to liquidate nonexempt assets as a remedy because the Debtors' assets constitute part of a going concern and a piecemeal sale of assets would reduce the value available to all creditors.

4934-2923-9398, v. 1

BAST AMRON LLP
One Southeast Third Avenue, Suite 2410
Miami, FL 33131
Telephone: (305) 379.7904
Email: jbast@bastamron.com
Email: jleggett@bastamron.com

By: _/s/ Jaime Leggett_
Jeffrey P. Bast, Esq. (FBN 996343)
Jaime B. Leggett, Esq. (FBN 1016585)

-and-

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Patricia B. Tomasco (admitted _pro hac vice_)
700 Louisiana, Suite 3900
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email: pattytomasco@quinnemanuel.com

-and-

Alain Jaquet (admitted _pro hac vice_)
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100
Email: alainjaquet@quinnemanuel.com

-and-

Razmig Izakelian (admitted _pro hac vice_)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213-443-3000
Facsimile: 213-443-3100
Email: razmigizakelian@quinnemanuel.com

_Counsel for the Debtors_

# EXHIBIT "A"

**Cinemex Holdings USA, Inc.**

**Effective Date Distributions & Plan Payments**
*in 000's*

Source: Management Assumptions
Assumed Effective Date: November 1, 2025

| | | Effective Date Distributions | | Year 1 | Year 2 | Year 3 | Total Year 1 - 3 |
|---|---|---|---|---|---|---|---|
| **Source of funds:** | | | | | | | |
| Projected cash as of Effective Date | 1 | 2,600 | | | | | |
| Estimated disposable income from projections | 2 | | | 3,239 | 5,067 | 6,880 | 15,187 |
| *Total sources of funds* | | 2,600 | | 3,239 | 5,067 | 6,880 | 15,187 |
| **Use of funds:** | | | | | | | |
| Estimated administrative claims | | | | | | | |
| BastAmron (Co-Counsel to Debtor) | 3 | (300) | | | | | |
| Quinn Emanual (Co-Counsel to Debtor) | 3 | (600) | | | | | |
| GlassRatner (FA to Debtor) | 3 | (275) | | | | | |
| Tarek Kiem (Sub Ch V Trustee) | 4 | (10) | | | | | |
| | | (1,185) | | 0 | 0 | 0 | 0 |
| Priority Unsecured Claims | | | | | | | |
| Tax Claim | 5 | (73) | | | | | |
| | | (73) | | 0 | 0 | 0 | 0 |
| *Total uses of funds* | | (1,258) | | 0 | 0 | 0 | 0 |
| *Net cash flow (deficit)* | | 1,342 | | 3,239 | 5,067 | 6,880 | 15,187 |
| **Estimated Distribution to GUCs - Ch 11 Plan** | 6 | | | (3,239) | (5,067) | (6,817) | (15,123) |
| **Estimated Distributions % to GUCs - Ch 11 Plan** | 7 | | | 21% | 34% | 45% | 100% |
| *15,123,217* | *in GUCs* | | | | | | |
| Beginning Cash Balance | 8 | | | 1,342 | 1,342 | 1,342 | 1,342 |
| New cash flow (deficit) | | 1,342 | | 3,239 | 5,067 | 6,880 | 15,187 |
| Estimated Distribution to GUCs - Ch 11 Plan | | | | (3,239) | (5,067) | (6,817) | (15,123) |
| **Ending Cash Balance** | | 1,342 | | 1,342 | 1,342 | 1,406 | 1,406 |

**Cinemex Holdings USA, Inc.**

**Effective Date Distributions & Plan Payments**

Assumptions to Effective Date Distributions and Plan Payments

Source: Management Assumptions
Assumed Effective Date: November 1, 2025

| Notes to Three Year Projection |
| --- |
| The projections are based on management's assumptions from their industry experience and expected industry trends. |

| No. | Description |
| --- | --- |
| 1 | Estimated beginning cash as of the Effective Date, November 1, 2025 |
| 2 | Projected estimate of disposable income based on Plan Projections revenue and expenses forecast |
| 3 | Projected estimate of accrued professional fees at time of confirmation.  Debtor's bankruptcy professional fees are subject to Court Approval prior to payment being made. |
| 4 | Projected estimate fees due to Tarek Kiem, the Sub Chapter V Trustee. |
| 5 | Amount of priority claim taxes owned to Miami Dade County |
| 6 | Represents the estimated distribution of Disposable Income to the GUCs |
| 7 | Represents the % of the total GUCs claim received each year during the three-year plan payments. The total amount of GUC claims includes the anticipated lease rejections. Lease negotiations are ongoing and the total GUC claim amount may be different based on the final lease determinations and/or the filed proofs of claim. |
| 8 | Estimated beginning cash as of the Effective Date, November 1, 2025, is included in the Source of funds, and not included in the Beginning Cash Balance so it is not double counted. |

**Cinemex Holdings USA, Inc.**

**Plan Projections**

*in 000's*

| | | Year 1 | | | Year 2 | | | Year 3 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 1st Half | 2nd Half | Total | 1st Half | 2nd Half | Total | 1st Half | 2nd Half | Total |
| Attendance ('000) | 1 | 2,064 | 2,234 | 4,298 | 1,967 | 2,301 | 4,269 | 2,026 | 2,370 | 4,397 |
| **Revenues:** | | | | | | | | | | |
| Box Office | 2 | 25,395 | 29,379 | 54,774 | 24,951 | 31,168 | 56,119 | 26,470 | 33,066 | 59,536 |
| Food & Beverage | 3 | 25,388 | 28,308 | 53,695 | 24,932 | 29,886 | 54,817 | 26,322 | 31,552 | 57,874 |
| Screen Advertising | 4 | 643 | 715 | 1,358 | 630 | 736 | 1,366 | 648 | 758 | 1,407 |
| Other | 5 | 1,656 | 1,823 | 3,479 | 1,636 | 1,934 | 3,570 | 1,725 | 2,032 | 3,757 |
| **Total Revenues** | | **53,082** | **60,224** | **113,306** | **52,148** | **63,724** | **115,872** | **55,165** | **67,408** | **122,573** |
| **Cost of Goods Sold:** | | | | | | | | | | |
| Film Rental | 6 | (14,947) | (17,484) | (32,430) | (14,721) | (18,548) | (33,270) | (15,618) | (19,678) | (35,296) |
| F&B Expenses | 7 | (4,947) | (6,003) | (10,950) | (4,849) | (6,337) | (11,187) | (5,120) | (6,691) | (11,810) |
| **Total Cost of Goods Sold** | | **(19,894)** | **(23,487)** | **(43,381)** | **(19,571)** | **(24,886)** | **(44,457)** | **(20,738)** | **(26,369)** | **(47,106)** |
| **Gross Profit** | | **33,188** | **36,738** | **69,926** | **32,577** | **38,838** | **71,415** | **34,428** | **41,039** | **75,467** |
| *Gross Profit Margin* | | *62.5%* | *61.0%* | *61.7%* | *62.5%* | *60.9%* | *61.6%* | *62.4%* | *60.9%* | *61.6%* |
| Payroll | 8 | (8,933) | (10,161) | (19,094) | (8,795) | (10,749) | (19,544) | (9,302) | (11,369) | (20,671) |
| Supplies & Services | 9 | (6,450) | (7,288) | (13,738) | (6,317) | (7,712) | (14,029) | (6,683) | (8,158) | (14,841) |
| **TLCF Before REE** | | **17,804** | **19,289** | **37,093** | **17,465** | **20,377** | **37,842** | **18,443** | **21,512** | **39,955** |
| *Margin* | | *33.5%* | *32.0%* | *32.7%* | *33.5%* | *32.0%* | *32.7%* | *33.4%* | *31.9%* | *32.6%* |
| **Real Estate Expenses:** | 10 | | | | | | | | | |
| Fixed Rent | | (7,793) | (7,534) | (15,328) | (7,598) | (7,622) | (15,220) | (7,682) | (7,705) | (15,387) |
| Percentage Rent | | (576) | (914) | (1,490) | (698) | (1,127) | (1,824) | (847) | (1,348) | (2,194) |
| CAM | | (421) | (390) | (811) | (395) | (397) | (792) | (402) | (405) | (807) |
| Landlord Insurance | | (14) | (2) | (16) | (2) | (2) | (3) | (2) | (2) | (3) |
| Property Tax | | (600) | (404) | (1,004) | (409) | (412) | (821) | (417) | (420) | (838) |
| **Total Real Estate Expenses** | | **(9,404)** | **(9,244)** | **(18,647)** | **(9,101)** | **(9,560)** | **(18,661)** | **(9,350)** | **(9,879)** | **(19,230)** |
| **Theater Level Cash Flow** | | **8,401** | **10,045** | **18,446** | **8,364** | **10,817** | **19,181** | **9,092** | **11,633** | **20,725** |
| *Margin* | | *15.8%* | *16.7%* | *16.3%* | *16.0%* | *17.0%* | *16.6%* | *16.5%* | *17.3%* | *16.9%* |
| **G&A:** | 11 | | | | | | | | | |
| Administrative | | (3,884) | (3,374) | (7,258) | (3,962) | (3,441) | (7,403) | (4,041) | (3,510) | (7,551) |
| Marketing | | (179) | (197) | (376) | (182) | (201) | (383) | (186) | (205) | (391) |
| **Total G&A** | | **(4,063)** | **(3,570)** | **(7,633)** | **(4,144)** | **(3,642)** | **(7,786)** | **(4,227)** | **(3,715)** | **(7,942)** |
| **Other Expenses:** | 12 | | | | | | | | | |
| D&A | | (4,869) | (4,634) | (9,503) | (4,735) | (4,802) | (9,537) | (4,915) | (4,992) | (9,908) |
| Other Expenses | | (817) | (531) | (1,348) | (503) | (564) | (1,067) | (527) | (586) | (1,114) |
| Credit card fees | | (450) | (473) | (922) | (482) | (487) | (969) | (496) | (501) | (998) |
| Taxes | | - | - | 0 | - | - | 0 | - | - | 0 |
| **Total Other Expenses** | | **(6,136)** | **(5,637)** | **(11,773)** | **(5,720)** | **(5,853)** | **(11,573)** | **(5,939)** | **(6,080)** | **(12,019)** |
| **Net Income** | | **(1,798)** | **837** | **(961)** | **(1,500)** | **1,322** | **(178)** | **(1,074)** | **1,839** | **764** |
| **Add-back:** | | | | | | | | | | |
| Depreciation and Amortization | | 4,869 | 4,634 | 9,503 | 4,735 | 4,802 | 9,537 | 4,915 | 4,992 | 9,908 |
| **Earning Before D&A** | | **3,072** | **5,471** | **8,543** | **3,235** | **6,124** | **9,359** | **3,841** | **6,831** | **10,672** |
| *Margin* | | *5.8%* | *9.1%* | *7.5%* | *6.2%* | *9.6%* | *8.1%* | *7.0%* | *10.1%* | *8.7%* |
| Less CapEx | | (2,428) | (2,875) | (5,303) | (2,292) | (2,000) | (4,292) | (1,917) | (1,875) | (3,792) |
| **Disposable Income** | | **643** | **2,596** | **3,239** | **943** | **4,124** | **5,067** | **1,925** | **4,956** | **6,880** |
| Three Years Disposal Income 2026 - 2028 | | | | | | | | | | **15,187** |

**Cinemex Holdings USA, Inc.**

**Three Year Projections**

**Assumptions to the Three Year Projection**

Source: Management Assumptions
Assumed Effective Date: November 1, 2025

| Notes to Three Year Projection |
|---|
| The projections are based on management's assumptions from their industry experience and expected industry trends. |

| No. | Description |
|---|---|
| 1 | Management estimated attendance at each individual theater based on theater results, industry trends, and expected future movie releases.  Movie release timing shifts could impact attendance results. |
| 2 | Management estimated box office revenue based on expected average ticket prices and attendance at each theater |
| 3 | Management estimated F&B revenue based on attendance at each theater and historical averages of F&B revenue per ticket sold |
| 4 | Management estimated Screen Revenue based on current agreements with advertisers and attendance forecast |
| 5 | Management estimated other revenue based on historic averages and attendance forecast |
| 6 | Film rental is based on individual studio agreements and estimated based on attendance and box of revenue of each movies released |
| 7 | Food and Beverage cost is based on expected food and beverage sales and with year over year inflation increases |
| 8 | Management estimated payroll expenses based on current headcount at each theater and adjusted for theater attendance forecast |
| 9 | Management estimated suppliers and services based on historic averages |
| 10 | Real estate expense are based on the estimated new lease agreements at each theater locations and the anticipated lease rejections. Lease negotiations are ongoing and result may be different based on the final lease determinations |
| 11 | Management estimated G&A expenses based on historic averages as a percent of sales |
| 12 | Management estimated Other expenses based on historic averages, attendance forecast, and expected depreciation schedule |

# EXHIBIT "B"

**Cinemex Holdings USA, Inc.**

**Liquidation Analysis**

*As of June 2025*

| | Note Reference | Recovery Estimate | | | Midpoint - Parent Loan treated as General Unsecured |
| --- | --- | --- | --- | --- | --- |
| | | Low | High | Midpoint | |
| **Assets** | | | | | |
| **Current Assets** | | | | | |
| Cash (Unrestricted Cash and Equivalents) | 1 | 2,600,000 | 2,600,000 | 2,600,000 | 2,600,000 |
| Accounts Receivable (Net) | 2 | 1,076,375 | 1,614,562 | 1,345,469 | 1,345,469 |
| Prepaid Expenses | 3 | 102,143 | 204,286 | 153,215 | 153,215 |
| Food and beverage inventories | 4 | 288,752 | 552,391 | 420,572 | 420,572 |
| **Total Current Assets** | | **4,067,270** | **4,971,240** | **4,519,255** | **4,519,255** |
| | | | | | |
| **Long Term Assets** | | | | | |
| Theater - Property, leasehold improvements, furniture and equipment - Net | 5 | 2,261,148 | 5,255,104 | 3,758,126 | 3,758,126 |
| Right-of-use assets | 6 | - | - | - | - |
| Other Assets | 7 | 566,010 | 1,132,021 | 849,016 | 849,016 |
| **Total Long Term Assets** | | **2,827,158** | **6,387,125** | **4,607,141** | **4,607,141** |
| | | | | | |
| **Total Assets** | | $ 6,894,429 | $ 11,358,364 | $ 9,126,397 | $ 9,126,397 |
| | | | | | |
| **Less Liquidation Costs** | | | | | |
| Chapter 7 Trustee Fees | 8 | 206,833 | 340,751 | 273,792 | 273,792 |
| Chapter 7 Broker Fees / Professional Fees | 9 | 344,721 | 1,135,836 | 740,279 | 740,279 |
| **Net Liquidation Proceeds** | | | | **8,112,326** | **8,112,326** |
| | | | | | |
| **Distribution of Proceeds** | | | | | |
| DIP Loan Claims | 10 | | | - | - |
| Administrative Claims | 11 | | | | |
| Chapter 11 Administrative Claims | | | | 1,258,250 | 1,258,250 |
| Supplies & Services | | | | 2,000,000 | 2,000,000 |
| Insurance | | | | 65,000 | 65,000 |
| Secured Claims | 12 | | | 4,715,825 | - |
| Priority Claims | 13 | | | 73,250 | 73,250 |
| **Net Liquidation Proceeds available for General Unsecured Creditors** | | | | **-** | **4,715,825** |
| | | | | | |
| **General Unsecured Claims** | | | | | |
| Trade & Other | 14 | | | 3,275,247 | 3,275,247 |
| Parent Company Loan treated as GUC | 15 | | | 43,723,792 | 48,439,618 |
| Rejection Damages | 16 | | | 32,820,069 | 32,820,069 |
| **Total General Unsecured Claims** | | | | **$ 79,819,108** | **$ 84,534,934** |
| | | | | | |
| *Estimated Recovery (%)* | 17 | | | *0%* | *6%* |

**Notes:**

[1]  The unrestricted cash balance is projected estimate as of November 1, 2025. It is assumed that cash and cash equivalents of the Debtors would be 100% collectible and available

[2]  The accounts receivable balance has been estimated as of June 30, 2025 at approximately $2.72 million.  The analysis of accounts receivable assumes the Debtor will in its best efforts collect balances owed.  Recoveries are estimated to be approximately between 20% and 60%.  Collections during the liquidation could be significantly compromised as customers may attempt to offset any amounts owed by the Debtor

[3]  Prepaid expenses include prepaid expenses, prepaid insurance, and other prepayments.  Estimated recovery is between 10% and 20% of Estimated Book Value.

[4]  Food and Beverage inventories includes wine, liquor, beer, perishable food, self-stable food, food supply items, food ingredients, food service items, and other food and beverage related items.  The analysis of recovery is based on the individual category.  In total, it is estimated that approximately 49% of the current balance will be recovered

[5]  Theater - Property, leasehold improvements, furniture, and equipment - Net includes leasehold improvements, furniture, equipment, software, computer equipment, and other Right-of-use assets.  The analysis of recovery is based on the individual category and based on the net book value.  In total, it is estimated that approximately between 4% and 9% of the Estimated Book Value will be recovered

[6]  Right-of-use assets is related to the accounting rule ASC 842 for the right to use certain leased assets.  The lease liabilities are found in the current and long term liabilities of the balance sheet.  It is assumed that there is 0% recovery for the right-of-use assets

[7]  Other Assets includes prepaid deposits, trademarks, permits, licenses, and goodwill. Estimated recovery is 10% of the Estimated Book Value

[8] Chapter 7 Trustee fees are estimated to be 3% of the total assets recovered

[9] Chapter 7 broker fees and Professional fees to execute the sale and winddown process are estimated between 5% and 10% of the total assets recovered

[10] No DIP loan is expected during the bankruptcy proceedings

[11] Supplies and Services represents approximately 30 days of suppliers and services received from post-petition activity and represents one month insurance premium

[12] Secured claim is the loan from the parent organization Wine and Roses

[13] Represents pre-petitions estimate for taxes owed to Miami Dade County

[14] Estimate of accounts payable and other liabilities as of June 30, 2025

[15] Represents the loan from the parent company, Wine and Roses, being subordinated as an General Unsecured Claim

[16] Represents the lease rejection damages calculated for all 28 properties pursuant to 11 U.S.C. sec. 502(b)(6) (i.e., the formula of the greater of a) one-year of lease obligations or b) 15% of the remaining lease term obligations capped at 3 years)

[17] The estimated recovery in the second liquidation scenario, where the Wine & Roses loan is subordinated and treated as unsecured, assumes that a Chapter 7 Trustee seeks such treatment and is successful. Wine & Roses has not consented to any treatment other than secured in any proceeding other than a proceeding under Subchapter V.