UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 25-17559 LMI<br>Chapter 11 (Subchapter V) |
| CINEMEX HOLDINGS USA, INC.,<br>CMX CINEMAS, LLC, and<br>CB THEATER EXPERIENCE LLC,[1] | (Jointly Administered) |
| Debtors. | **Hearing date: October 17, 2025 at<br>9:30 a.m. ET** |

_____/

## LIMITED OBJECTION OF BROOKFIELD LANDLORD TO CONFIRMATION OF DEBTORS' AMENDED PLAN OF REORGANIZATION

Coastland FS Anchor Parcel LLC and Tysons Galleria Anchor Acquisition, LLC (collectively, the "Brookfield Landlords"), through their undersigned counsel, respectfully submit their limited objection ("Limited Objection") to Debtors' proposed *Amended Plan of Reorganization* [ECF No. 201] (the "Amended Plan").

As discussed below, the Brookfield Landlords are generally supportive of Debtors' reorganization efforts and, indeed, are presently negotiating a potential lease amendment with respect to one of Debtors' leases. The Amended Plan, however, contains several provisions with respect to the assumption of real property leases that are inconsistent with the requirements of Bankruptcy Code Section 365, necessitating the filing of this Limited Objection.

---

[1] The Debtors in these cases and the last four digits of each Debtors' federal tax identification number are as follows: (1) Cinemex Holdings USA, Inc. (5502); (2) CMX Cinemas, LLC (1938); and (3) CB Theater Experience LLC f/k/a Cobb Theater Experience LLC f/k/a Cinemex NC, LLC (0563). The address for the Debtors is 4300 Biscayne Blvd, Suite 203, Miami, FL 33137.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

1.      On June 30, 2025, Debtors each filed voluntary petitions for relief under subchapter v of Chapter 11 of the United States Bankruptcy Code. On July 1, 2025, this Court entered its Order authorizing joint administration of these Chapter 11 cases [ECF No. 10]. No trustee or examiner has been appointed and Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1182(2) and 1184.

2.      Debtor CB Theater Experience LLC is a party to two nonresidential real property leases with the Brookfield Landlords: (1) Coastland Center (landlord Coastland FS Anchor Parcel LLC), located in Naples, Florida, and (2) Tyson Galleria (landlord Tysons Galleria Anchor Acquisition, LLC), located in McLean, Virginia. It cannot be seriously disputed that Debtors' leases with the Brookfield Landlords for theater premises at Coastland Center and Tysons Galleria are for premises in a "shopping center," as that term was defined in *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1087-1089 (3rd Cir. 1990).

3.      On September 5, 2025, Debtors filed their Amended Plan. Under the terms of the Amended Plan, Debtors intend to file a Plan Supplement identifying the unexpired real property leases designated for assumption and asserting "proposed cure amounts."

II.     **ARGUMENT**

    A.      **Debtors Must Provide for the Cure of Existing Defaults Under Real Property Leases to be Assumed**

4.      Article 6(a) of the Amended Plan provides that Debtors will assume, as of the Effective Date of the Amended Plan, Debtors' unexpired leases, excluding those previously rejected and those that may be designated for rejection in the Plan Supplement or a separate motion to reject leases. While a plan of reorganization may provide for "the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected,"

such assumption, rejection or assignment remains "subject to Section 365 of this title." 11 U.S.C. § 1123(b)(2). Debtors bear the burden of proving the requirements of Bankruptcy Code Section 365(b) by a preponderance of the evidence.  *See In re PRK Enterprises, Inc.*, 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999); *see also In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990).

5.      Bankruptcy Code Section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume and assign a lease.  As one court has held, "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption."  *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord*, *In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42, 49 (Bankr. S.D. Fla. 2005) ("The purpose of § 365(b)(1)(A) is to preserve the *entirety* of an unexpired lease upon assumption and cure any defaults." [emphasis in original]).

6.      Debtors have deferred assertion of the "proposed cure amounts" due in connection with the proposed assumption of leases until the filing of a Plan Supplement. While "cure amounts" have yet to be asserted, the Amended Plan does not clearly provide for their payment. Indeed, the Debtors' chart of "Effective Date Distributions & Plan Payments," part of Exhibit "A" to the Amended Plan, contains no line item for payments on account of Debtors' "cure obligations," contrary to Bankruptcy Code Section 365(b)(1)(A).

7.      Bankruptcy Code Section 365(b)(1) measures defaults as of the "time of assumption."  *See, e.g., In re Rachels Industries, Inc.*, *supra,* 109 B.R. at 811-812.  Debtors remain required to pay accruing post-petition rent and charges on a timely basis, as required by Bankruptcy

Code Section 365(d)(3), and the Brookfield Landlords each reserve their rights and remedies against Debtors with respect to any additional sums coming due prior to the hearing on confirmation of the Amended Plan, irrespective of the timing of the Plan Supplement.

**B.    Debtors' Assumption of Leases Cannot Be "Free and Clear" of Lease Obligations**

8.      It is well-established that the requirement that a debtor "provide[] adequate assurance of future performance" is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(C); *see In re Old Market Group Holdings Corp.*, 647 B.R. 104, 110 (Bankr. S.D.N.Y. 2022).[2]

9.      It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Joshua Slocum, Ltd.,* 922 F.2d at 1086; *In re Trak Auto Corporation*, 277 B.R. 655, 665-66 (Bankr. E.D. Va. 2002) (The legislative history of 1984 amendments to Section 365 "indicates that Congress sought to provide special protections to lessors of a debtor."). Bankruptcy Code Section 365(b)(3), added as part of the so-called 1984 "Shopping Center Amendments" to the Bankruptcy Code, provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance:

> A)      of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor

---

[2]      While Bankruptcy Code Section 365(b)(1) provides that adequate assurance of future performance must be demonstrated as a condition of assumption "[i]f there has been a default in an executory contract or unexpired lease of the debtor," the triggering "default" need not be an active, uncured default as of the time of assumption. *See, e.g., In re Hawkeye Entertainment, LLC*, 49 F.4th 1232, 1237-1239 (9th Cir. 2022); *In re Wingspread Corp.*, 116 B.R. 915, 928 (Bankr. S.D.N.Y. 1990) (holding that a default under 11 U.S.C. § 365(b)(1) "does not have to be present.")

and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B)    that any percentage rent due under such lease will not decline substantially;

(C)    that *assumption or assignment of such lease is subject to all the provisions thereof,* including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D)    that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3) (emphasis added.)

10.    The initial burden of presentation as to adequate assurance falls upon the Debtors. *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1079 (9th Cir. 1989). The *Sea Harvest* court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's "empty declaration does not provide the compensation and assurances required by Section 365(b)(1)." *Sea Harvest,* 868 F.2d at 1080.

11.    Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g., Matter of Haute Cuisine, Inc.,* 58 B.R. 390, 393-94 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.,* 64 B.R. 363, 364-65 (Bankr. M.D. Fla. 1986)

12.    Here, the Amended Plan seeks to prematurely extinguish certain accrued but unbilled or unasserted lease liabilities, thus failing to provide adequate assurance of future performance. Article 6 of the Amended Plan provides, in pertinent part, that the assumption of an "unexpired lease pursuant to the Plan or otherwise, shall result in the full and final satisfaction,

settlement, release and discharge of any Claims or defaults …." Article 7 of the Amended Plan similarly provides that "upon the Effective Date of the Plan (as defined in Article 8.02), all property and assets of the Debtors shall re-vest in the Debtors, *free and clear of all Claims*, liens, encumbrances, charges, and other interests …." (emphasis added). The Amended Plan makes it clear (at footnote 2) that the term "Claim," as used in the Amended Plan, is as defined in Section 101(5) of the Bankruptcy Code.

13.     Bankruptcy Code Section 101(5) defines a Claim as "[any] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." "As has frequently been observed, this definition is extremely broad." *In re Old Market Group Holdings Corp.*, 647 B.R. 104, 112-113 (Bankr. S.D.N.Y. 2022), *citing Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ("Congress intended ... to adopt the broadest available definition of 'claim.' "); *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 156 (2d Cir. 2016), *cert denied*, 581 U.S. 1813, 137 S. Ct. 1813 (2017) (Even a right to payment contingent on future events is a claim under Section 101(5) if it "result[s] from pre-petition conduct fairly giving rise to that contingent claim."); *see also JELD-WEN, Inc. v. Van Brunt (In re Grossman's)*, 607 F.3d 114, 119-121 (3d Cir. 2010) (a "claim" may exist before a right to payment arose (or accrued) under state law).

14.     There are numerous accruing obligations under Debtors' leases with the Brookfield Landlords in addition to the payment of monthly base rent. As with most modern "triple net" leases, Debtors' leases provide for the monthly payment of the tenant's pro-rata share of certain expenses (common area maintenance expenses, insurance, taxes, etc.) based on budgeted amounts, subject to later reconciliation based on actual expenses incurred. Many of Debtors' leases,

including any lease amendments negotiated during these Chapter 11 cases, provide for the accrual and payment of percentage (or "overage" rent). Such sums that accrue under the ordinary terms of Debtors' leases, but are not yet due, are not in "default" for purposes of "cure" under Bankruptcy Code Section 365(b)(1)(A). But the Amended Plan seeks to discharge these liabilities and further provides that "[n]o party to any assumed executory contracts or unexpired lease may attempt to collect on such Claims or defaults through any other means …." Based on the purported assumption of real property leases "free and clear," what assurance do the Brookfield Landlords have that any lease obligations and expenses billed in arrears, such as percentage rent or expense reconciliations that may be attributable to periods prior to the proposed Effective Date of the Amended Plan will be paid?

15.    These limitations on the scope of assumed liabilities under assumed leases, accompanied by what amounts to an injunction against their enforcement, are contrary to Bankruptcy Code Section 365(b)(3)(C)'s requirement "that assumption or assignment of [a shopping center lease] is *subject to all the provisions thereof*" (emphasis added) and case law holding that the bankruptcy court may not modify or excise material obligations owing to the non-debtor contracting party. *See, e.g., N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531-532, 104 S. Ct. 1188, citing *In re Italian Cook Oil Corp.*, 190 F.2d 994, 996 (3d Cir. 1951); *Cinnicola v. Scharffenberger*, 248 F.3d 110, 119 (3rd Cir. 2001) ("If the trustee [or debtor-in-possession] meets the assumption requirements under § 365 it must assume the executory contract *entirely*." (emphasis added).)  "If the debtor decides to assume a lease [], it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed." *In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D. Del. 2008); *see also In re New York Skyline, Inc.*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) ("Neither the debtor nor the bankruptcy court may excise

material obligations owing to the non-debtor contracting party."). Put simply, any provisions of the Amended Plan that attempt to disclaim or limit the Reorganized Debtors' post-Effective Date liabilities for accrued but unbilled liabilities do not provide the Brookfield Landlords with adequate assurance of future performance with respect to those obligations. *See* 11 U.S.C. § 365(b)(1)(C), (b)(3)(C) and (f)(2)(B).[3]

16.    The scope of liabilities under assumed leases that are potentially discharged or limited by the Amended Plan is not limited to monetary obligations. Debtors' leases with the Brookfield Landlords contain customary provisions requiring the tenant to indemnify and hold the respective landlord harmless from claims, damages and liability arising from tenant's use and occupancy of the leased premises and to maintain certain insurance coverage. As discussed above, Debtors attempt to modify and limit the scope of assumed liabilities through the Amended Plan and the proposed assumption of real property leases "free and clear" of "Claims."

17.    But what of third party claims (such as a customer "slip and fall") that occurred prior to the Effective Date but are not asserted until after the Effective Date? Debtors, with the burden of demonstrating adequate assurance of future performance, have offered no proposal for satisfaction of the indemnification requirements of assumed leases should a third party premises liability claim be asserted against the Brookfield Landlords for events or occurrences on the leased premises prior to the Effective Date. To the contrary, the Amended Plan seeks to avoid such contingent liabilities, contrary to the terms of Debtors' leases with the Brookfield Landlords,

---

[3]    In this regard, the discharge and exculpation provisions of Article 9 of the Amended Plan also need to be clarified and modified. In particular, would the various lease amendments that Debtors are pursuing, including with the Brookfield Landlords, constitute a "restructuring transaction" or "contract" entered into "in connection with the Plan" and the "pursuit of confirmation" that would be released?

contrary to the requirement that assumption be "subject to all of the provisions thereof." 11 U.S.C. § 365(b)(3)(C).

### C.    Debtors Improperly Seek to Extend the Time to Assume or Reject Leases Beyond Plan Confirmation

18.    Debtors' Amended Plan, at Article 6(b), purports to "reserve the right on or before the Effective Date, to amend the Plan Supplement to add or remove any executory contract or unexpired lease." There is no authority for a reorganized debtor to assume or reject leases *following confirmation of a plan of reorganization* (such as the Effective Date).  The authority to assume or reject leases is limited by the express terms of Section 365(a) to a trustee, which includes a debtor-in-possession by virtue of Section 1107(a), but does not extend to reorganized debtors.  *See In re Grinstead*, 75 B.R. 2, 3 (Bankr. D. Minn. 1985) ("There is no debtor in possession status of a debtor post-confirmation.").

19.    Indeed, Debtors' proposed reservation of the ability to reject leases after confirmation of its Amended Plan is at odds with the language of Bankruptcy Code Section 365(d)(4)(A), limiting the time to assume or reject to "the date of entry of an order confirming a plan," not some later date (such as the Effective Date or later).  *See also In re Grayson-Robinson Stores, Inc*., 227 F.Supp. 609, 613-615 (S.D.N.Y. 1964) (pre-Code case where court refused to permit rejection of an executory contract after plan confirmation).  It is widely accepted that the purpose of Bankruptcy Code Section 365(d)(4), added as an integral part of what are commonly referred to as the 1984 "Shopping Center Amendments," was to prevent trustees and debtors-in-possession from taking too much time in deciding whether to assume, assume and assign or reject unexpired nonresidential real property leases.  *See Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989); *In re Channel Home Centers, Inc*., 989 F.2d 682, 686 (3d Cir.

1993).  Here, Debtors' Amended Plan seeks to do just that, rendering this feature of the Proposed Plan contrary to applicable law. 11 U.S.C. § 1129(a)(2).

> **D.    The Default Provisions of the Amended Plan Improperly Impair and Modify Landlords' Remedies Under Assumed Leases**

20.    The default provisions of the Amended Plan (at Article 10(f)) are objectionable, impairing the Brookfield Landlords' contractually bargained for remedies under the terms of assumed leases and applicable state law. Article 10(f) of the Amended Plan would require ten (10) days' e-mail and facsimile notice to Debtors' counsel (the "<u>Default Notice</u>") to give Debtors time to either cure the default or seek a modification of the Amended Plan under Bankruptcy Code Section 1193. This provision must also be read in connection with Article 10(b) of the Amended Plan, providing that "[p]ursuant to 11 U.S.C. §§ 362(c)(2) and 362(a), the automatic stay – among other things – shall continue to apply to the Debtors and the Debtors' property as re-vested in the Debtors until the earlier of the time that the case is closed or the case is dismissed."

21.    The Amended Plan thus imposes significant and burdensome requirements on the Brookfield Landlords should Debtors default, post-confirmation, under the terms of an assumed lease. Read literally, the Amended Plan creates a continuing "gatekeeper" role for this Court before a landlord can pursue ordinary remedies for post-confirmation lease defaults against the Reorganized Debtors, effectively requiring, over the life of the Amended Plan, that the Brookfield Landlords serve a Default Notice and then file and prosecute a motion for relief from the automatic stay, all before exercising remedies under the assumed leases. Such additional procedures, on top of ordinary state law landlord-tenant remedies (including service of a contractual notice of non-payment or other lease violation), with attendant delay and expense, frustrate ordinary summary proceedings contemplated by the leases and applicable state law and amount to a nonconsensual modification of Debtors' leases with the Brookfield Landlords, contrary to the principles of

Bankruptcy Code Section 365.  In this regard, the Amended Plan does not provide for "appropriate remedies" to protect the Brookfield Landlords in the event that future payments are not made (11 U.S.C. § 1191(c)(3)(B)) and is not "fair and equitable" (11 U.S.C. § 1191(b)). Any Default Notice procedure and the continuing application of the automatic stay should simply be excluded from application to Debtors' assumed real property leases, which should be governed by their terms.

## III.    <u>RESERVATION OF RIGHTS</u>

The Brookfield Landlords each reserve their respective rights to further object to any proposed assumption or assumption and assignment of their real property leases with the Debtors, on additional grounds based upon any new information provided by the Debtors, including the Plan Supplement, or upon any different relief requested by the Debtors including, without limitation, any further proposed modifications or amendments to the Amended Plan.

## IV.    <u>CONCLUSION</u>

22.    While the Brookfield Landlords support Debtors' efforts to achieve a reorganization, the Amended Plan, in its current form, cannot be confirmed. Any attempt to impair or discharge the Reorganized Debtors' responsibility with respect to accrued, but unasserted, Claims with respect to assumed leases does not provide the Brookfield Landlords with adequate assurance of future performance with respect to those obligations. *See* 11 U.S.C. § 365(b)(1)(C) and (f)(2)(B).

Respectfully Submitted,
October 7, 2025

<u>/s/ Joaquin J. Alemany, Esquire</u>
Joaquin J. Alemany, Esq.
Florida Bar No. 662380
**HOLLAND & KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 789-7763
Facsimile: (305) 789-7799
E-mail: joaquin.alemany@hklaw.com

*Counsel for Coastland FS Anchor Parcel LLC*
*and Tysons Galleria Anchor Acquisition, LLC*

<u>/s/ Ivan M. Gold, Esquire</u>
Ivan M. Gold, Esq. (Admitted *Pro Hac Vice*)
**ALLEN MATKINS LECK GAMBLE**
 **MALLORY & NATSIS LLP**
3 Embarcadero Center, 12th Floor
San Francisco, CA 94111-4074
Telephone:    (415) 837-1515
Facsimile: (415) 837-1516
E-mail: igold@allenmatkins.com

*Counsel for Coastland FS Anchor Parcel LLC*
*and Tysons Galleria Anchor Acquisition, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this October 7, 2025, a true and correct copy of the foregoing was served via electronic transmission on all CM/ECF registered users for this case.

By: <u>/s/ Joaquin J. Alemany</u>
Joaquin J. Alemany, Esq.